**Roy G. CROSBY, Jr., Appellant,**

v.

**E. C. ELLSWORTH, Warden, Appellee.**

**No. 23288.**

United States Court of Appeals, Ninth Circuit.

April 13, 1970.

Rehearing Denied Aug. 31, 1970.

Roy G. Crosby, in pro. per.

J. C. Wiengartner (argued), Asst. Atty. Gen., Robert L. Woodahl, Atty. Gen., State of Montana, Helena, Mont., for appellee.

Before HAMLEY, MERRILL and WRIGHT, Circuit Judges.

HAMLEY, Circuit Judge:

■ Roy G. Crosby, Jr. appeals from a district court order denying his application for a writ of habeas corpus. Crosby was convicted in a Montana state court, on two counts of bigamy. His conviction was upheld by the Supreme Court of Montana. State v. Crosby, 148 Mont. 307, 420 P.2d 431 (1966). Although Crosby has completed service of his sentence pending the appeal herein, this does not moot the federal habeas proceeding. Carafas v. LaVallee, 391 U.S. 234, 238, 240, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968).

■ Most of the issues raised in Crosby's habeas application and in his briefs on appeal present only questions of state law as to which federal habeas relief is not available. See Miller v. Gladden, 341 F.2d 972, 976 (9th Cir. 1965). He does, however, argue that the Montana statutes relating to bigamy and marriage are so confusing and inconsistent that they are void for vagueness under the Due Process Clause of the Fourteenth Amendment. While Crosby did not raise this question in his state trial or in the appeal from his conviction, he did present it in a subsequent petition for a writ of habeas corpus, filed with the Montana Supreme Court. That court denied his petition. Petition of Crosby, 151 Mont. 572, 440 P.2d 770 (1968).

The setting in which Crosby advances this contention is rather complex. It involves six marriages and three divorces participated in by him over a twelve-year period running from 1948 to 1960. At the state trial the prosecution established the following sequence of marriages and divorces involving Crosby:

1. Married Dorothy Fortney on May 27, 1948.

2. Married Lilly Shaw on March 1, 1955, while he was under the alias of Gary Bernard Wilkinson.

3. Divorced Dorothy Fortney Crosby on June 17, 1955.

4. Married Bonita Jarvi on October 27, 1956.

5. Divorced Bonita Jarvi Crosby on January 7, 1958.

6. Married Mary Lou Daniels on May 14, 1958.

7. *Married Bonita Jarvi Crosby on August 19, 1958.*

8. Divorced Bonita Jarvi Crosby on February 11, 1960.

9. *Married Judy Lohrer on February 11, 1960.*

Crosby was charged, in Count I of the information, with having married Bonita Jarvi on August 19, 1958 (his second marriage to her), at which time he had "a living wife" (unnamed in the information). Count II charged him with cohabiting with Judy Lohrer, as husband and wife, on February 11, 1960, at which time he had "a living wife" (also unnamed in the information). The allegedly bigamous marriages appear in italics in the above list.

At Crosby's state trial, the prosecution relied upon Crosby's March 1, 1955 marriage to Lilly Shaw and upon his May 14, 1958 marriage to Mary Lou Daniels as the prior marriages which rendered his subsequent 1958 marriage to Bonita Jarvi (Count I) and his 1960 marriage to Judy Lohrer (Count II) bigamous. But Crosby argues that both the Lilly Shaw and Mary Lou Daniels marriages were themselves bigamous and therefore void. Crosby reasons from this that those

marriages could not be relied upon by the state as valid prior marriages rendering subsequent marriages bigamous.

Crosby bases his contention that his marriage to Lilly Shaw was void from the beginning upon his preexisting marriage to Dorothy Fortney. His contention that his marriage to Mary Lou Daniels was void from the beginning rests upon proof he produced at the trial that Mary Lou's previous marriage to one Daniels had not been dissolved by divorce at the time Crosby married her on May 14, 1958.

In his agument that a bigamous marriage is void from the beginning in Montana, Crosby relies upon Rev. Codes of Mont. § 48–111 (1947), a provision of the Montana civil statutes pertaining to marriage. The relevant part of that statute reads:

> "**Subsequent marriage**—when illegal and void. A subsequent marriage contracted by any person during the life of a former husband or wife of such person, with any other person than such former husband or wife, is illegal and void from the beginning, unless:

> "1. The former marriage has been annulled or dissolved.

> "2. * * * *"

The warden, on the other hand, argues that although a bigamous marriage may be void "from the beginning" under the civil statute, it nevertheless renders a subsequent marriage bigamous under the Montana criminal statute, unless it has been pronounced void, annulled or dissolved by a court. In support of this view, the warden relies upon the language of the two bigamy statutes under which Crosby was convicted. The statutes read, in relevant part:

> "**Bigamy defined.** Every person having a husband or wife living who marries any other person, except in the cases specified in the next section, is guilty of bigamy." Rev. Codes of Mont. § 94–701 (1947).

> "**Exceptions.** The last section does not extend:

> * * *

> "To any person by reason of any former marriage which has been pronounced void, annulled or dissolved by the judgment of a competent court." Rev. Codes of Mont. § 94–702 (1947).

In State v. Crosby, 148 Mont. 307, 420 P.2d 431 (1966), the Supreme Court of Montana agreed with the position the warden takes on this appeal. That court held that a determination of voidness of a previous marriage "cannot be made by the person involved to avoid being charged with a criminal act." 420 P.2d at 433.

This determination by the Supreme Court of Montana as to the meaning and application of the statutes of that state is binding upon the federal courts. Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). But this is not dispositive of Crosby's void-for-vagueness argument. He questions whether, in the light of the construction the Montana Supreme Court has placed upon the indicated statutes, their meaning is so hidden and obscure as to render the statutes void for vagueness in the due process sense.

It is, however, an established principle of federal adjudication that questions of constitutional law are not to be dealt with in advance of the necessity of deciding them. Communist Party v. Subversive Activities Control Board, 367 U.S. 1, 71–72, 81 S.Ct. 1357, 6 L.Ed.2d 625 (1961). Under that rule we need not reach Crosby's void-for-vagueness argument, if he is mistaken in his contention that both of the prior marriages relied upon by the prosecution to support the bigamy charge were themselves invalid. In that event, the prosecution would not be relying only upon bigamous prior marriages as to which, Crosby asserts, the Montana civil and criminal statutes, when considered jointly, are confusing and inconsistent.

In contending that the August, 1958 marriage to Bonita Jarvi and the February, 1960 marriage to Judy Lohrer were bigamous, the prosecution relied, in part,

upon Crosby's marriage to Mary Lou Daniels on May 14, 1958. Crosby argued at trial and subsequently that his marriage to Mary Lou Daniels was void from the beginning under section 48–111, because Mary Lou had been married to one Daniels since July 3, 1952. But while Crosby proved at his trial that there was no Montana record that the Daniels marriage had been dissolved by court order, he did not prove that Daniels was alive on May 14, 1958, when Crosby married Mary Lou.

If Daniels was not alive on May 14, 1958, his marriage to Mary Lou had been dissolved by his death, in which case Crosby's marriage to Mary Lou on that date was valid under his own reading of the Montana statutes. In that event the latter marriage would, even under Crosby's theory, constitute a valid prior marriage rendering his subsequent marriages to Bonita Jarvi and Judy Lohrer bigamous.[1]

■ For the reasons just stated we hold that Crosby's conviction on the two bigamy counts is sustainable upon the basis of what, on the state trial record, appears to be his prior valid marriage to Mary Lou Daniels. This being the case no problem arises concerning possible confusion and inconsistency between Montana's bigamy and marriage statutes.

In his opening brief on appeal, Crosby complains that the information under which he was charged did not name the "living wives" which the state believed rendered the Bonita Jarvi and Judy Lohrer marriages bigamous. He also states that the Montana Supreme Court, in affirming his conviction, assumed that it was the prior marriage to Mary Lou Daniels that rendered the Bonita Jarvi Crosby and Judy Lohrer marriages bigamous. On the other hand, according to Crosby, "the entire prosecution and defense was centered around the marriage by the Defendant to Lilly Shaw Wilkinson, with the alleged marriage to Mary Lou Daniels as an incidental. * * *"

■ Assuming that Crosby is thus attempting to raise, in this federal habeas proceeding, a due process question concerning notice of the state charges of which he was convicted,[2] we do not believe the contention entitles him to relief.

First, he is mistaken in asserting that the "entire prosecution and defense" was centered around the Lilly Shaw Wilkinson marriage, with the Mary Lou Daniels marriage as "an incidental." The prosecution relied equally upon both of these marriages as the existing prior marriages rendering the Bonita Jarvi and Judy Lohrer marriages bigamous. Second, Crosby made no objection at his state trial, nor did he claim surprise and ask for a continuance, on the ground that he did not have notice that the state was relying upon the Mary Lou Daniels marriage.[3] Third, Crosby had actual prior notice that the state was relying upon the Mary Lou Daniels marriage because her name was listed as a witness on the information. Fourth, in his seventeen-page petition for a writ of habeas corpus, filed in the Supreme Court of Montana, Crosby makes only brief mention of the matter. He does not identify it as a due process question or in any other way give adequate notice that he is raising a constitutional issue.

The described considerations lead us to the view that Crosby has not, in this proceeding, raised a due process question

1. Mary Lou Daniels was still alive on February 11, 1960, when Crosby married Judy Lohrer, and Mary Lou's marriage to Crosby had not been pronounced void, annulled or dissolved by court judgment.

2. Instead of invoking the Due Process Clause, Crosby refers to this circumstance only as an "impermissible variance." But we must make allowance for the fact that he is proceeding in propria persona.

3. Crosby did object at the trial to testimony concerning the Mary Lou Daniels marriage, but on the ground that this marriage was not charged in the information as a bigamous marriage. The trial court overruled this because the state was not relying upon that marriage as one of the bigamous marriages but as one of the prior valid marriages.

of substance about the notice given him concerning the crimes charged.

Other questions presented by Crosby have been considered but we find them to be without merit.

Affirmed.

## ON PETITION FOR REHEARING

In the state bigamy prosecution which lies at the root of this habeas corpus proceeding, the state relied upon Crosby's prior marriages to Lilly Shaw and Mary Lou Daniels as rendering bigamous Crosby's subsequent marriages to Bonita Jarvi and Judy Lohrer. Crosby contends in this habeas proceeding that both of these prior marriages were invalid and therefore neither could have served as a predicate for his bigamy conviction. In our opinion affirming denial of habeas relief, filed April 13, 1970, we stated reasons which led us to believe that the prior Daniels marriage provided a valid foundation for Crosby's conviction and therefore found it unnecessary to determine whether the prior Shaw marriage could also serve as a valid foundation for the conviction.

In his extensive petition for rehearing, Crosby advances some arguments which call for amplification of the views expressed in our April 13, 1970 opinion.

Crosby's contention that his prior marriage to Mary Lou Daniels was void from the beginning rests principally upon proof he produced at the trial that her previous marriage to Daniels had not been dissolved by a Montana divorce at the time Crosby married her. In our opinion of April 13, 1970, we disposed of this contention by stating that while Crosby proved the Daniels marriage had not been dissolved by a Montana court order, he did not prove that Daniels was alive on May 14, 1958, when Crosby married Mary Lou. We observed that if Daniels was not alive on May 14, 1958, his marriage to Mary Lou had been dissolved by his death, in which case it would not affect the validity of Crosby's marriage to Mary Lou on that date.

Crosby now suggests that the burden was not upon him to prove that Daniels was still alive on May 14, 1958, but the burden was upon the prosecution to prove that he was not alive, pointing out that it was essential to the state's case to prove a valid prior marriage.

■ It is the general rule that when a person has contracted two successive marriages, a presumption arises in favor of the validity of the second marriage, and the burden is upon the party attacking the validity of the second marriage to establish that the first marriage has not been dissolved by death, divorce or annulment at the time of the second marriage. This presumption overrides the presumption of subsistence that attached to the prior marriage. Tatum v. Tatum, 241 F.2d 401, 406 (9th Cir., 1957).

■ This general rule is followed in Montana. Welch v. All Persons, etc., 78 Mont. 370, 254 P. 179, 182 (1927); Shepherd & Pierson Co. v. Baker, 81 Mont. 185, 262 P. 887 (1927); Spradlin v. United States, 262 F.Supp. 502, 504 (D.C.Mont. 1967). In *Welch*, the Montana Supreme Court said:

"* * * whenever a marriage has been established, there is a presumption in favor of its validity. It will not be overthrown by the mere proof of a prior marriage; the presumption of innocence overcoming the presumption of the continued existence of the prior marriage. * * * This presumption arises because the law presumes morality, and not immorality, and every intendment is in favor of matrimony. * * * The presumption in favor of matrimony is one of the strongest known to the law. * * *

"In the case of conflicting marriages of the same spouse, the presumption of validity operates in favor of the second marriage. Even where the first marriage is established, it may be presumed in favor of the second that at the time thereof the first marriage had been dissolved either by death or by a decree of divorce so as to cast the burden of adducing evi-

dence to the contrary on the party attacking the second marriage." 254 P. at 182.

It follows that, insofar as Crosby's attack upon the prior Daniels marriage rests upon his burden of proof contention, it is without merit.

█ It may be, however, that Crosby also intends to challenge the validity of the prior Daniels marriage upon the ground that her marriage to Crosby on May 14, 1958 was bigamous because of his prior marriage to Lilly Shaw on March 1, 1955. It is true that Crosby's marriage to Lilly Shaw was itself subject to being set aside as bigamous because he was then validly married to Dorothy Fortney. (See the chronology of marriages and divorces in our prior opinion.) But, under the Montana criminal-bigamy statute, Rev. Codes of Mont. §§ 94–701 and –702 (1947), the Shaw marriage nevertheless stood in the way of a subsequent marriage, *until* the Shaw marriage was annulled.

But while the Daniels marriage was for this reason itself subject to being set aside as bigamous, the same statute also established it as a barrier to any subsequent valid marriage until the Daniels marriage was annulled. It has never been annulled.

This interpretation of the cited Montana criminal-bigamy statute is fully supported by the decision of the Supreme Court of Montana on the appeal from Crosby's bigamy conviction. State v. Crosby, 148 Mont. 307, 420 P.2d 431 (1966). The Montana Court there specifically held that Crosby's marriage on March 1, 1955, to Lilly Shaw, although subject to being set aside as bigamous, did not invalidate his later marriage to Mary Lou Daniels, because the Lilly Shaw marriage had not been annulled.

In so ruling, the Montana Court held that the criminal-bigamy statute referred to above controlled notwithstanding a provision of the Montana civil statutes pertaining to marriages (§ 48–111, R.C.M.1947). The latter statute provides, insofar as here relevant, that a subsequent marriage contracted by any person during the life of a former husband or wife of such person, with any other than such former husband or wife " * * * is illegal and void from the beginning, unless: 1. The former marriage *has been* annulled or dissolved." (Emphasis supplied.)

Crosby expresses the view that due process considerations required Montana to give controlling effect to the civil-bigamy statute rather than the criminal-bigamy statute. Under this theory it would have to be held that Crosby's marriage to Mary Lou Daniels was " * * * illegal and void from the beginning. * * * *" and could not serve as the prior valid marriage supporting Crosby's bigamy conviction.

Crosby apparently invokes the Due Process Clause on the ground that the Montana statutes are impermissibly vague or have been construed irrationally by the courts of that state.

█ There are a number of court decisions in states other than Montana which hold that, under the pertinent statutes of the respective jurisdictions, if it appears that the prior marriage relied upon by the prosecution was itself bigamous, that prior marriage does not provide a proper foundation upon which to find a third marriage bigamous. But this is not the question which the Montana Supreme Court decided in *Crosby*. The Montana Supreme Court held that, in view of the differing provisions of the civil marriage statutes and criminal-bigamy statutes of Montana with regard to the viability of a bigamous marriage in the absence of annulment, the provisions of the criminal-bigamy statutes would control in bigamy prosecutions. In none of the cases decided in other states, insofar as we can determine, did the court address itself to such a problem.

Without undertaking to pass judgment on the merits of the Montana Court's determination that the civil statutes pertaining to marriage should be applied only with regard to civil matters such

as marital and property rights, and the criminal statutes pertaining to bigamy should be applied with regard to bigamy prosecutions, we do not believe that determination is so irrational as to invoke a due process problem. On the contrary, we think it makes good sense. Otherwise, one who has entered into a bigamous marriage and thereafter obtains a dissolution of his first and only valid marriage, would be free to contract as many successive bigamous marriages as he pleased, for there would be no prior valid marriage. This is exactly what Crosby tried to do.

There is an additional consideration tending to show that Montana's construction of its own statutes makes good sense. That construction discourages one from marrying in reliance upon his own assumption that a prior marriage by either of the parties is invalid because it was bigamous, or for some other reason. Such an assumption may well be faulty because of misinformation as to the facts, or a misunderstanding of the law. The only safe course, as the Montana criminal statute precisely provides, is to delay remarriage until the prior marriage has been judicially dissolved or may be disregarded for one of the other reasons stated in the statute.

The civil statutes pertaining to marriage, however, are not concerned with the effect of an invalid marriage upon a subsequent marriage, but upon the marital and property rights flowing from the invalid marriage itself. It is accordingly provided in the civil statutes, in effect, that no rights can arise therefrom, even though there is a delay in obtaining an annulment, or such an annulment is never obtained.

The facts of this case are, of course, completely distinguishable from a situation where the courts of a state, *after* a commission of an act which is charged to be a crime, give the statute in question a construction which would make the act a crime, whereas the literal language or the prior decisions of that state call for a narrow construction which would not include the act in question.

Bouie v. City of Columbia, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964), was such a case. In *Bouie* the statute prohibited only *"entry* upon the lands of another * * * after notice from the owner * * * prohibiting such entry * * *."* (Emphasis supplied.) Yet, after the commission of the act complained of, the Supreme Court of South Carolina for the first time construed the statute as also prohibiting the different act of *remaining* on the premises after being *asked to leave.* In its decision prior to the commission of the alleged offense, the South Carolina courts had strictly limited the statute to cases where there had been an *entry* after notice.

Holding that Bouie did not violate the statute as written, the United States Supreme Court held that there had been a denial of due process because the new state construction unexpectedly broadened a statute which on its face had been definite and precise.

In our case, the Montana Supreme Court, in Crosby's appeal, construed the criminal-bigamy statute precisely as it is written, and for the first time. The contention that this was a "broadened" construction is based not upon the criminal statute, but upon the view that, in a bigamy prosecution the Montana courts were required to apply the narrower scope of the civil marriage statute rather than the literal terms of the bigamy statute. As demonstrated above, no previous Montana decision, or any decision in any other case called to our attention, had held that such a civil statute must control over such a criminal statute.

It is worth noting that Montana's bigamy and marriage statutes, apparently copied from the California statutes, or their equivalents, have been on the books of that state since before 1871. They were enacted prior to any of the court decisions from other states which have been called to our attention. This is not

a case of a state being bound by the interpretation given the same statute, by courts of the source state, prior to its enactment by the copying state. Even if it was, only a question of statutory construction would be presented—not a due process problem.

Crosby appears to argue that, even if the prior Daniels marriage provides a sufficient basis for Crosby's conviction of bigamy because of his subsequent marriages, the fact that the state also relied upon the prior Shaw marriage interjects a due process problem. In essence, Crosby here invokes the established rule that when a case is submitted to the jury on alternative theories the unconstitutionality of any of the theories requires that the conviction be set aside. See Leary v. United States, 395 U.S. 6, 31–32, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969); Williams v. North Carolina, 317 U.S. 287, 291–292, 63 S.Ct. 207, 87 L.Ed. 279 (1942).

The answer to this contention is twofold: (1) If the state prosecution's theory based on the prior Shaw marriage is erroneous, it is because the state has misapplied the statutes of Montana, and not because of any constitutional defect; (2) the state prosecution's theory is not erroneous, but is based upon an interpretation of Montana statutes approved by the Supreme Court of that state. As we said in our opinion of April 13, 1970, Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), binds us to apply Montana's construction of its own statutes. This rule may not apply in a criminal case where the statute has been construed in a wholly irrational manner, or where the application of the statute is impermissible under the void for vagueness doctrine. In our opinion neither of these exceptions is applicable here.

The other arguments advanced in Crosby's petition for rehearing have been considered, but we find them to be without merit.

The petition for rehearing is denied.