Paul C. ALBERTS, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. 5492.

Supreme Court of Wyoming.

March 19, 1982.

Michael H. Schilling, Appellate Counsel, Wyoming Public Defender Program, Laramie, and Sylvia Lee Hackl, Asst. Appellate Counsel, Wyoming Public Defender Program, Cheyenne, for appellant.

Steven F. Freudenthal, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Crim. Div., Allen C. Johnson, Senior Asst. Atty. Gen., and Sharon A. Lyman, Asst. Atty. Gen., for appellee.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

ROONEY, Justice.

Appellant-defendant was convicted, after a jury trial, of four felony counts: Aggravated robbery in violation of § 6–4–402, W.S.1977[1]; aggravated assault with felonious intent in violation of § 6–4–503, W.S. 1977[2]; child stealing in violation of § 6–4–

---

1. Section 6–4–402, W.S.1977, provides:
 "Whoever forcibly and feloniously takes from the person or possession of another any property of value, by violence or by putting in fear, when a firearm or other deadly weapon is used or exhibited in the commission of the offense, is guilty of aggravated robbery and shall be imprisoned in the penitentiary for not less than five (5) years nor more than fifty (50) years."

2. Section 6–4–503, W.S.1977, provides:
 "Whoever perpetrates an assault, or assault and battery, upon any human being with intent to commit a felony, shall be imprisoned in the penitentiary no more than fourteen (14) years."

202, W.S.1977 [3]; and felony murder in violation of § 6–4–101, W.S.1977.[4] He appeals from the resulting judgment and sentence, contending that reversible error exists in:

1. The denial of his motion to suppress the identification testimony of eyewitnesses Goodwin and Gamroth, and the refusal to sustain his objections to in-court identification by these witnesses,

2. The denial of his motion to dismiss the count charging him with child stealing for the alleged reason that § 6–4–202, W.S.1977 is unconstitutional on its face, and

3. An alleged failure to adequately instruct the jury on the necessary elements of the underlying felony in connection with the felony-murder count.

We affirm.

## IDENTIFICATION

At about 12:15 a. m. on September 16, 1979, witness Goodwin got out of bed and found an armed intruder in his living room. The intruder took Goodwin's watch and other property at gunpoint. After the intruder left, it was determined that the watch, wallet and other property of Chuck Miller, who rented the downstairs apartment from Goodwin, were missing.

At about 12:30 a. m. on the same day, a masked, armed man entered the house of Trudy Sutherland. Goodwin's house and that of Sutherland are next to each other on South Chestnut Street in Casper. At the time, Sutherland's house was occupied by 15-year-old witness, Kevin Gamroth, and

Sutherland's two children, Chad, age 3 and Christy, age 9. Gamroth was babysitting for the other two children. At gun point, the intruder forced Gamroth into the alley where he had him remove his jeans, boots and underwear and told him to start running. Gamroth did so, but he rounded the corner to South Chestnut Street and observed the intruder leaving the Sutherland house with Christy. When Gamroth approached the intruder and asked where he was taking Christy, the intruder started to take out his gun. Gamroth then said that he would leave. He went in the house and called the police. On December 2, 1979, Christy's body was found in the North Platte River. The death was caused by a gun shot to her head.

The description of the intruder given by Goodwin and that given by Gamroth, together with the fact that the incidents occurred in adjacent houses led the police to believe that the two incidents involved the same intruder. During the police investigation at Sutherland's house, they found some photographs of an individual matching the descriptions given by Goodwin and Gamroth. Gamroth had not been able to identify the intruder from a book of photographs shown to him by the police. However, both Gamroth and Goodwin identified the man in the photographs taken from Sutherland's house as that of the intruder. While the police were at Sutherland's house, her sister called on the telephone. When the sister was given the description of the intruder, as furnished by Gamroth and Goodwin, she said that it seemed to match the description of appel-

---

3. Section 6–4–202, W.S.1977, provides:

"Whoever takes, leads, carries, decoys, or entices away a child under the age of twelve (12) years, with intent unlawfully to detain or conceal such child from its parents, guardian, or other person having the lawful charge or custody thereof; and whoever, with intent aforesaid, knowingly harbors or conceals any such child so led, taken, carried, decoyed or enticed away, shall upon conviction thereof, suffer death, but the jury may qualify their verdict by adding thereto, 'without capital punishment' and whenever the jury shall re-

turn a verdict qualified as aforesaid, the person convicted shall be sentenced to imprisonment in the penitentiary for any term not less than one (1) year, or during life."

4. Section 6–4–101, W.S.1977, provides in pertinent part:

"Whoever * * * in the perpetration of, or attempt to perpetrate any rape, sexual assault, arson, robbery or burglary * * * kills any human being * * * is guilty of murder in the first degree."

lant, a former friend of Sutherland.[5] When Sutherland finally returned home, she identified appellant as the person in the photographs and said to be the intruder by Gamroth and Goodwin.

Appellant was arrested at his home about 4:30 a. m. that morning. Goodwin identified him as the intruder upon viewing him through a two-way mirror at a time appellant was being interviewed by the police. Both Goodwin and Gamroth made a positive identification of appellant as the intruder at the preliminary hearing and at the trial.

Appellant contends that the identifications by Goodwin and Gamroth deprived him of due process of law because the witnesses were presented with photographs of only one person (appellant) and because Goodwin's first eyewitness view of appellant through the two-way mirror was not of him in a lineup. Appellant argues that such was impermissibly suggestive and gave rise to a substantial likelihood of misidentification. Further, he argues that such tainted the subsequent eyewitness identifications at the preliminary hearing and in court, making them so questionable as to make their admission into evidence a denial of due process of law.

"In *Reinholt v. State*, Wyo., 601 P.2d 1311, 1313 (1979), we said:

"'* * * [W]e recently addressed the propriety of such pre-court identification in *Campbell v. State*, Wyo., 589 P.2d 358 (1979). We there examined the current status of the law relative thereto and made reference to the pertinent authorities. It would be redundant to again review the matter here except to note the conclusions therein reached relative to the issue. We there concluded that the consideration is whether or not there is a very substantial likelihood of irreparable misidenti-

fication upon a *totality of the circumstances*; that the pretrial identification evidence is admissible if it possesses features of reliability despite a suggestive aspect; and that in making the determination of reliability, the following factors should be weighed against the corrupting effect of the suggestive identification itself:

"'1. Opportunity of the witness to view the criminal at the time of the crime;

"'2. The witness' degree of attention;

"'3. The accuracy of his prior description of the criminal;

"'4. The level of certainty demonstrated at the confrontation; and

"'5. The time between the crime and the confrontation.' (Emphasis in original.)" (Footnote omitted.) *Sears v. State*, Wyo., 632 P.2d 946, 947–948 (1981).

Appellant acknowledges such to be the status of the general law relative to this issue but contends that the application of the five factors to the totality of the circumstances of this case reflects the identifications to have been unreliable. We do not agree. We find that the identifications were not *impermissibly* suggestive under the circumstances; and that, even had they been, they were reliable under the totality of the circumstances of this case.

Identifications are not impermissibly suggestive when the exigencies of the situation require variance of the normal and desirable procedural precautions usually taken to lessen the likelihood of misidentification. *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Sears v. State*, supra. The exigencies of the situation in this instance are obvious. A 9-year-old child had

---

5. Sutherland and appellant met in September, 1975. They became sexually intimate in October 1976. They would spend three to four hours together each day and took three to five trips out of town together. The relationship broke off in February 1979 when, during a quarrel, Sutherland told appellant to go home to his wife, and he hit her a number of times.

He also hit Christy on this occasion. They subsequently established a friendly, speaking relationship, and appellant asked her for a date only one or two days before September 15, 1979. She told him she had another engagement and he said he knew who it was with and that he "will take care of him." He also knew that she had dated Goodwin on occasion.

been abducted from her home by an armed and masked man. Her welfare was paramount. An immediate identification of the abductor could possibly lead to his apprehension and, perhaps, to the safety of the child. The exigencies were more pressing than those in *Simmons v. United States*, supra, or in *Sears v. State*, supra. The procedure utilized in securing the identifications in this case were not *unnecessarily* suggestive. See *Neil v. Biggers*, supra.

Furthermore, application of the five factors recognized in *Campbell v. State*, Wyo., 589 P.2d 358 (1979); *Reinholt v. State*, Wyo., 601 P.2d 1311 (1979); *Sears v. State*, supra; and *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), reflect the reliability of the identifications under the totality of the circumstances of this case. Each witness had ample opportunity to view the intruder at the time of the crime. Each carried on a conversation with the intruder. The intruder was within arm's length of each. The intruder was in the presence of each for more than fleeting seconds. The intruder certainly had the attention of each witness. He was displaying an attention getting gun. He was the only other person present in each instance— except for the time that Gamroth met him in front of the house with Christy. He threatened to shoot each of them. Their attention could hardly be elsewhere, and the degree of attention had to be high. The prior description given by each witness was sufficient for the police to conclude that the intruder in each instance was the same person, and for Sutherland's sister to attribute such to be of appellant. The descriptions were generally that of appellant. Gamroth did not identify any of the photographs shown to him by the police prior to the time he was shown the photograph of appellant. Each witness was certain of the identification. Cross-examination of each relative to the certainty only emphasized the high level of certainty. The time interval between the crime and the identification was minimal. Under the totality of the circumstances the identifications were reliable. Cer-

tainly, appellant has not carried the burden required of him to establish to the contrary. *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

## CONSTITUTIONALITY OF CHILD–STEALING STATUTE

 Appellant contends that reversible error exists in the failure of the trial court to sustain appellant's motion to dismiss the count of the information charging child stealing in violation of § 6–4–202.[6] He argues that the statute is unconstitutional on its face inasmuch as it does not set forth proper procedures and guidelines guaranteeing that the imposition of the death sentence thereunder is not arbitrary, capricious or based on emotion, passion and prejudice. Such procedure and guidance was mandated by *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), and a carefully drafted statute giving adequate information and guidance to the sentencing authority was said in *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), to meet such requirements.

In *Kennedy v. State*, Wyo., 559 P.2d 1014 (1977), we held unconstitutional a first degree murder statute mandating the death penalty, and we directed the substitution of a sentence of imprisonment for life for the death sentence imposed in that case. Subsequently, the legislature enacted a murder statute containing the procedures and guidelines required by *Furman v. Georgia*, supra, and its progeny, i.e., § 6–4–102. In denying appellant's motion, the trial court noted that a statute similar to § 6–4–102 had been upheld by the United States Supreme Court. The procedure set forth in such statute was followed in this case. The jury recommended that appellant be given a life sentence on the child stealing count. He was so sentenced.

We need not address the issue relative to the constitutionality of § 6–4–202, nor need we address the issue of whether or not the procedure set forth in § 6–4–102 is properly

---

**6.** See footnote 3.

applicable to a sentence imposed under § 6–4–202 inasmuch as appellant does not have standing to raise those issues.[7] The constitutionality of a statute may not be attacked by one whose rights are not adversely affected by the operation thereof. *McKinney v. State*, 3 Wyo. 719, 30 P. 293 (1892); *Walgreen Co. v. State Board of Equalization*, 70 Wyo. 193, 246 P.2d 767 (1952); *In re Edelman's Estate*, 68 Wyo. 30, 228 P.2d 408 (1951); *Cosco v. State*, Wyo., 503 P.2d 1403 (1972), cert. denied 411 U.S. 971, 93 S.Ct. 2164, 36 L.Ed.2d 693 (1973); *Budd v. Bishop*, Wyo., 543 P.2d 368 (1975).

■ Appellant was not given the death penalty. Even if such had been done and if we had determined the statute to have been unconstitutional, the underlying conviction would not have been invalidated and appellant would be resentenced to the same sentence he had here received. *Kennedy v. State*, supra.

## INSTRUCTIONS

■ Appellant contends that the jury was not adequately instructed relative to the necessary elements of the underlying felony which had to be proven beyond a reasonable doubt to support a conviction of the charge of felony murder.[8] The felony-murder charge was premised on the death of Christy in conjunction with the burglary of the Sutherland house.

The jury was instructed that each count was a separate offense and that it was to decide each one separately. The jury was instructed concerning the necessity of finding appellant guilty beyond a reasonable doubt. In connection with the felony-murder charge, the jury was instructed that one of the necessary elements of the crime was that "the killing occurred during the perpetration of or attempt to perpetrate the crime of burglary," and that all of the elements had to be proven beyond a reasonable doubt. The jury was instructed that:

" * * * Under Wyoming law the crime of burglary is defined as intentionally enter-

ing or attempting to enter any building or dwelling without the consent of the person in lawful possession and with intent to steal or commit a felony therein."

Appellant did not offer any instructions in this respect. He did object to the instructions which set forth the elements of the felony-murder charge and to the instruction which defined the crime of burglary. The objections were based on the fact that appellant was not charged with the crime of burglary and yet the jury must find him guilty of such charge in the course of finding him guilty of the felony murder.

We find that (1) the instructions were adequate, (2) the error here alleged was not brought to the attention of the trial court through objection, and (3) appellant cannot predicate error on failure to give an instruction which was not offered.

" * * * The duty of the court is discharged when it charges the jury on the general principles applicable in the case. * * * " *Benson v. State*, Wyo., 571 P.2d 595, 597 (1977).

" * * * No particular form is essential for the wording of an instruction so long as it conveys as a whole a correct statement of the applicable law. * * * " *United States v. Afflerbach*, 547 F.2d 522, 524 (10th Cir. 1976), cert. denied 429 U.S. 1098, 97 S.Ct. 1118, 51 L.Ed.2d 546, reh. denied 430 U.S. 976, 97 S.Ct. 1670, 52 L.Ed.2d 372 (1977). See *Benson v. State*, supra; *Horn v. State*, Wyo., 554 P.2d 1141 (1976).

" * * * A jury must be instructed on all material essentials * * *." *Murdock v. State*, Wyo., 351 P.2d 674, 682 (1960).

The jury was instructed on all material essentials. The elements of the crime of felony murder were given. The definition (which, of course, included the elements) of the underlying felony, i.e., burglary, was given. The jury was instructed on the general principles applicable to the case. Appellant cannot complain that a specific form

---

**7.** Even if the trial court's basis of decision is incorrect, it will not be reversed if it is sustainable on another theory. *Weber v. Johnston Fuel Liners, Inc.*, Wyo., 540 P.2d 535 (1975); *Wightman v. American National Bank of River-*ton, Wyo., 610 P.2d 1001 (1980); *Skinner v. Skinner*, Wyo., 601 P.2d 543 (1979).

**8.** See footnote 4.

or grouping of words as desired by him were not used.

The issue here presented concerns the alleged failure to instruct on the elements of the underlying felony (burglary). The objection to the instructions made at trial concerned the alleged impropriety of giving an instruction relative to the underlying felony (burglary) when the appellant was not charged with burglary. These are two different things. The trial court was not presented with the issue now urged on appeal. He had no opportunity to react to it.

The spirit and policy of our rules with reference to instructions [9] is to apprise and inform the trial court of the purpose of offered instructions and of objections to proposed instructions so that he may have an opportunity to correct and amplify them before submission to the jury. *Haley v. Dreesen*, Wyo., 532 P.2d 399 (1975); *Danculovich v. Brown*, Wyo., 593 P.2d 187 (1979); *Cox v. Vernieuw*, Wyo., 604 P.2d 1353 (1980); *Downs v. State*, Wyo., 581 P.2d 610 (1978). Absent plain error, we will not consider instruction error on appeal when the trial court was not given an opportunity to address the issue. *Jackson v. Gelco Leasing Company*, Wyo., 488 P.2d 1052 (1971); *Hays v. State*, Wyo., 522 P.2d 1004 (1974); *Edwards v. Harris*, Wyo., 397 P.2d 87 (1964). Inasmuch as we find the given instruction to be adequate there was no plain error.

 Appellant's argument concerns the failure of the trial court to give an additional instruction. But he did not offer one. Thus, he did not properly preserve his claim of error. *Moore v. State*, Wyo., 542 P.2d 109 (1975). See Rule 31, W.R.Cr.P., and Rule 51, W.R.C.P. (footnote 9). The desired instruction should have been submitted in writing. *Langdon v. Baldwin-Lima-Hamilton Corporation*, Wyo., 494 P.2d 537 (1972). See Rule 31, W.R.Cr.P., and Rule 51, W.R.C.P. (footnote 9).

Affirmed.

---

9. Rule 31, W.R.Cr.P., provides:

"Instructions to the jury shall be given and objections thereto made at the time and in the manner provided for the giving of instructions and the making of objections thereto in the Wyoming Rules of Civil Procedure. Opportunity shall be given to make objections out of the hearing and presence of the jury. Copies of requested instructions shall be served on adverse parties."

Rule 51, W.R.C.P., provides:

"At any time before or during the taking of evidence, the court may give to the jury such general instructions as to the duties and functions of the court and jury, and the manner of conducting the trial, as it may deem desirable to assist the jury in performing its functions. Such instructions, exclusive of rulings which are recorded by the court reporter for inclusion in any record, shall be reduced to writing, numbered and delivered to the jury with the other instructions and shall be a part of the record in the case.

"At the close of the evidence, or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. Before the argument of the case to the jury is begun, the court shall give to the jury such instructions on the law as may be necessary and same shall be in writing, numbered and signed by the judge, and shall be taken by the jury when it retires. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make any such objection out of the hearing of the jury. All instructions offered by the parties, or given by the court, shall be filed with the clerk and, with the endorsements thereon indicating the action of the court, shall be a part of the record of the cause."