In the Matter of the PARENTAL RIGHTS OF PP, A Minor Child.

CP, Appellant (Respondent),

v.

LARAMIE COUNTY DEPARTMENT OF PUBLIC ASSISTANCE AND SOCIAL SERVICES, Appellee (Petitioner).

No. C–11.

Supreme Court of Wyoming.

July 14, 1982.

Rehearing Denied Aug. 3, 1982.

Richard Scott Rideout (argued), of Vines, Rideout & Gusea, P. C., Cheyenne, for appellant.

David Evans (argued), of Bagley, Hickey, Evans & Statkus, Cheyenne, and Sue Davidson of Urbigkit & Whitehead, P. C., Cheyenne, as guardian ad litem, for appellee.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

ROONEY, Justice.

After a trial, the district court entered an order on December 14, 1981 terminating CP's parental rights in PP. In appealing from such order, CP words the issues as follows:

"I. Whether the evidence before the District Court was sufficient to sustain the Order Terminating the Parental Rights of the Appellant.

"II. Whether the District Court erred in refusing to continue the hearing as authorized by Section 14–3–316, W.S.1981 [sic] [§ 14–2–316, W.S.1977, Cum.Supp. 1981], as a reasonable and lesser intrusion upon a fundamental liberty.

"III. Whether the District Court committed error in allowing testimony of witnesses for the Appellee in violation of the physician-patient privilege, the psychologist-client privilege and hearsay testimony of the Guardian Ad Litem and other witnesses."

We affirm.

## SUFFICIENCY OF THE EVIDENCE

CP is the mother of PP. CP was never married, and a father is not present or involved in these proceedings. CP was born October 2, 1955. PP was born July 26, 1975. The termination of parental rights was made pursuant to §§ 14–2–308 through 14–2–318, W.S.1977, Cum.Supp.1981. Section 14–2–309 provides in pertinent part:

"(a) The parent-child legal relationship may be terminated if any one (1) or more of the following facts is established by clear and convincing evidence:

\* \* \* \* \* \*

"(iii) The child has been abused or neglected by the parent and efforts by an authorized agency or mental health professional have been unsuccessful in rehabilitating the family or the family has refused rehabilitative treatment, and it is shown that the child's health and safety would be seriously jeopardized by remaining with or returning to the parent."

The evidence in this case is directed to "neglect" not to "abuse" (except insofar as the neglect results in abuse). Section 14–2–308(a)(vi) makes applicable to the proceedings under the enactment, the definition of neglect as set forth in § 14–3–202(a)(vii), W.S.1977:

"(vii) 'Neglect' means a failure or refusal by those responsible for the child's welfare to provide adequate care, maintenance, supervision, education or medical, surgical or any other care necessary for the child's well being. \* \* \* "

■ Thus we examine the evidence to ascertain if it clearly and convincingly establishes the facts: (1) that CP has failed or refused to provide adequate care, maintenance, supervision, education or medical, surgical, or other care necessary for PP's well being; (2) that rehabilitative efforts by authorized agencies have been unsuccessful in correcting the situation; and (3) that PP's health and safety would be seriously jeopardized by remaining with or returning to CP. In examining such evidence, we are mindful of the fact that it is a fundamental right for one to have custody of his minor child, and that we must therefore consider the evidence with "strict scrutiny." *DS v. Department of Public Assistance and Social Services*, Wyo., 607 P.2d 911 (1980); and *State in Interest of C*, Wyo., 638 P.2d 165 (1981).

" * * * 'Strict scrutiny' is the standard applied when it becomes necessary to balance a fundamental right against a compelling state interest. It requires the establishment of the compelling state interest and the showing that the method of achieving such is the least intrusive of those methods by which such can be accomplished. [Citations.]" *State in Interest of C*, 638 P.2d at 173, citing, among others, *DS v. Department of Public Assistance and Social Services*, supra.

We further said in *DS v. Department of Public Assistance and Social Services*, supra, 607 P.2d at 919–920:

"In reviewing the facts of this case to ascertain if the standards above discussed have been met, we do so with all of the applicable appellate directives in mind, which include these rules: We will examine the evidence in the light most favorable to the appellee and will resolve all conflicts in evidence for the appellee. [Citation.] We will assume the evidence in favor of the successful party is true, leave out of consideration entirely evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may fairly be drawn from it. [Citations.]"

■ We will discuss the sufficiency of the evidence to establish that rehabilitative efforts by authorized agencies have been unsuccessful in correcting PP's situation as we consider the second issue presented on this appeal. The evidence is clear and convincing that CP has failed—perhaps in spite of good intentions to do otherwise—to provide adequate care, maintenance, supervision, education and medical attention as is necessary for PP's well being; and that PP's health and safety will be seriously jeopardized by remaining with CP.

The following facts were established with certainty: PP has many physical and mental problems. Some are attributable to her premature birth. She has special needs beyond that of an ordinary child. Because of her special needs, she must be afforded care, supervision, education, support, atten-tion and stimulation beyond and above that required by a normal child. At the age of one year and five months and again at two years and two months, PP was referred to STRIDE Learning Center, a preschool for developmentally disabled, for the special education and attention necessary to minimize and alleviate some of the difficulties occasioned by her disabilities. CP refused or neglected to enroll her. Tests reflected that PP's disabilities became more severe and extensive during this period. At the age of three years, PP was enrolled at STRIDE. Upon reaching school age, she entered the public school system at Cheyenne (Laramie County School District No. 1) in August 1980. She was there found to be unusually and severely delayed in her development. STRIDE and public school professionals testified that PP's progress was impeded by lack of stimulation, support and stability on the part of CP. On many occasions, CP could not be located to take custody of PP at the end of the school day. Often, PP had to stay overnight with STRIDE staff. PP had excessive absences from STRIDE and from the public school. Most absences were occasioned by CP's personal problems and because of continued changes in her residence. PP has been hospitalized on several occasions. Some of PP's hospital stay was for custodial purposes (CP did not have a place to take her) and not for medical reasons. Medical, educational and social professionals testified that much of PP's lack of development was caused by her home environment and the lack of stimulation and support on the part of CP. They observed significant improvement in PP's skills during times when she was in foster homes. Since PP's birth, CP has had very little employment. She changes residences often, living at times in transient hotels. She has had three or four surgeries since the birth of PP and is not physically healthy. She has a severe and chronic dependency on drugs. She acknowledged a great deal of difficulty in handling stress due to her physical condition and emotional traumas such as that precipitated by the death of her mother and the break up of a four-year relationship with a man with whom she had been living.

The situation in this case is similar to that which existed in the *Matter of C.M.*, Wyo., 556 P.2d 514 (1976). We there found neglect sufficient for termination of parental rights resulting from incapacity and inability of the parents to properly care for the child. Our focus is upon the health, well being and safety of the child. In this case, PP started her life with a handicap. CP not only neglected to give her the support, stability and stimulation necessary to cope with the handicap and to allow development within her capabilities, but such neglect caused additional regression in the desired skills and in the ability to acquire the desired skills. Testimony of professional witnesses was to the effect that CP had all she could do to handle her own personal problems let alone give proper assistance, care and attention to the problems of PP.

Continued neglect by CP will hinder the development of PP to the extent of her capabilities. PP needs regular attendance at school in order to receive the special help required to improve her underdeveloped motor, social, cognitive and self-help skills. She needs supportive *attention* in these areas at home.

Our compassion and understanding of CP's situation and our recognition of CP's fundamental right to custody of PP must give way to the clear and convincing evidence that PP's health and well being has suffered greatly as a result of CP's neglect.

Furthermore, the evidence is clear and convincing that continued custody of PP in CP will only result in further damage to PP's well being and health. PP's need for stability and support in efforts to advance the skills in which she is deficient will not diminish. There is no evidence of a change in CP's physical and emotional condition. She has not attended sessions set up for her with mental health professionals.

## LESSER INTRUSION

■ CP contends that the trial court erred in failing to apply a less intrusive or restrictive alternative before terminating her parental rights in PP. CP suggests that the procedure outlined in § 14–2–316, W.S.1977, Cum.Supp.1981, should have been used:

> "If the court does not terminate the parent-child legal relationship, it shall dismiss the petition or direct an authorized agency to continue to make efforts to rehabilitate the parent and continue the hearing for no longer than six (6) months. The authorized agency shall provide the court with any additional reports regarding its rehabilitative efforts and results. Pending final hearing, the court may continue the present placement of the child or place the child in the temporary custody of an authorized agency and fix responsibility for temporary child support."

And we have said that it must be shown "that less intrusive means of protecting the child (such as counseling the parents) have been attempted or are impractical," before parental rights are terminated. *DS v. Department of Public Assistance and Social Services*, supra, n.6, 607 P.2d 922.

The evidence is more than sufficient to support the trial court's finding:

> "10. That there have been many efforts to rehabilitate [CP] by various agencies in the community, some of those efforts having failed, and some of those efforts being refused by [CP]."

At CP's request, PP was placed in foster care by appellee on more than one occasion while CP had some of her physical problems corrected. CP was not cooperative and consistent in responding to appellee's attempts to secure employment for her. Mental health care was provided for CP, and she was offered help in an effort to overcome her drug dependency. CP's physician, school district professional personnel and STRIDE's consulting psychologist attempted to counsel CP and rehabilitate her so that she could properly give parental attention and care to PP. None of these efforts were successful—except the effort to get PP enrolled at STRIDE. That was not accomplished until the third attempt, and then attendance was poor, and CP did not supply the home support and stimulation necessary to make the efforts at STRIDE fully effective.

The potential for additional action less intrusive and restrictive than termination of parental rights does not exist. In other words, extensive efforts at less intrusive and restrictive alternatives to termination of parental rights have already been made without success.

## ALLEGED ERROR IN ADMITTING TESTIMONY

CP contends that the testimony of Charles Frentheway, M.D., concerning his communications with CP, together with supporting hospital records during the time he was treating her (1978 to 1980), was privileged and was improperly received into evidence. She makes the same contentions relative to the testimony of Dr. Fleming, a licensed consulting psychologist.

Rule 501, W.R.E., provides:

"Except as otherwise required by constitution or statute or by these or other rules promulgated by the Supreme Court of Wyoming, the privilege of a witness, person, government, state, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the State of Wyoming in the light of reason and experience."

There was no physician-patient privilege at common law. 81 Am.Jur.2d Witnesses, § 230; 2 Louisell and Mueller, Federal Evidence, § 215.

Section 1–12–101, W.S.1977, provides in pertinent part:

"(a) The following persons shall not testify in certain respects:

"(i) An attorney or a physician concerning a communication made to him by his client or patient in that relation, or his advice to his client or patient. * * * "

Section 33–27–103, W.S.1977, provides in pertinent part:

"A licensed psychologist may not reveal without the consent of his client any communication made by the client to him or the client's legal advisor or his advice given hereon in the course of professional employment * * *."

Such statutory physician-patient or psychologist-client privilege is limited by the provisions of § 14–3–210, W.S.1977:

"Any privileged communication between husband and wife or privileged communication claimed by any professional person other than the attorney-client privilege, is not a ground for excluding evidence regarding a child in any judicial proceeding resulting from a report made pursuant to W.S. 14–3–201 through 14–3–215."

Sections 14–3–201 through 14–3–215, W.S. 1977, set forth a procedure for ascertaining and correcting child abuse and neglect. Their purpose is set forth in § 14–3–201:

"The purpose of W.S. 14–3–201 through 14–3–215 is to protect the best interest of the child, to further offer protective services when necessary in order to prevent any harm to the child or any other children living in the home, to protect children from abuse or neglect which jeopardize their health or welfare, to stabilize the home environment and to preserve family life whenever possible."

Section 14–3–205(a), W.S.1977, mandates a report to the county department of public assistance and social services of such by:

"Any person who knows or has reasonable cause to believe or suspect that a child has been abused or neglected or who observes any child being subjected to conditions or circumstances that would reasonably result in abuse or neglect * * *."

■ Thus the privileges created between physician-patient and psychologist-client by §§ 1–2–101 and 33–27–103, W.S.1977, are limited by the subsequent enactment of §§ 14–3–201 through 14–3–215, W.S.1977.

The principal of the School District No. 1 school attended by PP made such a report. STRIDE and Dr. Fleming also reported such incidents to appellee. This proceeding is a result, at least in part, from such reports. Accordingly, the physician-patient and psychologist-client privileges are "not a ground for excluding evidence regarding" PP.

We note that the testimony here questioned concerns communications between CP and the physician and psychologist and not that between PP and the physician and psychologist. However, the language of § 14–3–210, supra, is definite in removing the privilege from all evidence "regarding a child." Such language does not restrict application to communications between the child patient or child client and the physician or psychologist. This case affords a proper example of propriety of the language chosen by the legislature. Evidence of PP's condition and the cause thereof was inextricably bound up in the mental and physical state of CP. The issue of neglect could only be properly examined in the context of the physical, emotional and mental conditions of both CP and PP. All possible evidence from all possible sources "regarding" the child is necessary to fulfill the purpose of the enactment, i.e., "to protect the best interest of the child," "to prevent any harm to the child," "to protect children from abuse or neglect which jeopardize their health or welfare," "to stabilize home environment." Section 14–3–201, supra.

CP could not properly claim the existence of a physician-patient privilege or a psychologist-client privilege to exclude evidence from the physicians and the psychologist "regarding" PP. Their testimony in this case concerning both CP and PP was with "regard" to PP. It was not error to admit such testimony.

Pursuant to § 14–2–312, W.S.1977, Cum. Supp.1981,[1] the trial court appointed a guardian ad litem to represent the child's interests in the proceeding. The guardian ad litem was an attorney at law. She was afforded an opportunity to make an opening statement and to cross-examine all witnesses. She did cross-examine most of them. After closing arguments by appellee and CP, the court called upon the guardian ad litem. She began by saying that she was making a report to the court. CP objected to a report-type presentation as distinguished from a closing argument. The court advised that it would:

"* * * consider it in the nature of a report from the guardian ad litem and similar to a social report."

CP contends that it was error to do so. The guardian ad litem reported that she had reviewed appellee's records and school records; that she talked to those who had testified, to CP's friends, to one of her landladies, to the foster parents into whose custody PP had been temporarily placed, to PP and to others; and that she had observed CP and PP's interaction on several occasions. She recommended termination of CP's parental rights in PP.

In representing the ward's interests, the guardian ad litem should express to the court that which he considers will further such interests. This is often done during a hearing by accepting the presentation and argument of the guardian ad litem favorable to one side or the other as the guardian ad litem believes is in the best interest of the child. Otherwise, the purpose in an appointment of a guardian ad litem would be thwarted. If the guardian ad litem were other than an attorney at law, his position on behalf of the child could be obtained only through his testimony or in some fashion other than actual participation as an attorney in the hearing. The position of a guardian ad litem who is also an attorney at law can be obtained through such actual participation, i.e., during legal argument, cross-examination of witnesses, etc. But it need not be so restricted. The position of the guardian ad litem was here presented in the form of a report "similar to a social report" in which the guardian ad litem made her recommendation.

■ As required by § 14–2–314, W.S. 1977, Cum.Supp.1981,[2] the court had already

---

1. Section 14–2–312 provides in pertinent part:
   "After the petition has been filed, the court shall appoint a guardian ad litem to represent the child. * * *"

2. Section 14–2–314 provides:

"Upon the filing of a petition, the court shall direct that a social study be made by the appropriate county office of public assistance and social services or by any authorized agency to aid the court in making a final disposition of the petition. The social study

directed a social study by an authorized agency. The report was received in evidence.

Although it would have been more appropriate to have limited the guardian ad litem, who had participated in the trial as an attorney at law, to a conventional closing argument with opportunity during trial to present any proper factual matters by means of admissible evidence, whatever error may have resulted from receipt of the report without opportunity for cross-examination is harmless in this instance. That reported by the guardian ad litem was only a restatement of some of that already said and otherwise evidenced during the hearing.

"No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." Rule 61, W.R.C.P.

"Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Rule 7.04, W.R.A.P.

"Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Rule 7.05, W.R.A.P.

We have established a three-part test to determine whether or not an error may achieve the status of plain error.

" * * * First, the record must be clear as to the incident which is alleged as error. Second, the party claiming that the error amounted to plain error must demon-

strate that a clear and unequivocal rule of law was violated. Finally, that party must prove that a substantial right has been denied him and as a result he has been materially prejudiced.   * * * " *Bradley v. State*, Wyo., 635 P.2d 1161, 1164 (1981).

Certainly, the second and third requirements are not here present. To warrant reversal, the error must be prejudicial. *ABC Builders, Inc. v. Phillips*, Wyo., 632 P.2d 925 (1981).

There is nothing in the record to reflect that the district court relied upon the report of the guardian ad litem in making its determination, and the only material in it in addition to that abundantly and repetitiously already presented to the court was the recommendation of the guardian ad litem. Such recommendation could be gathered from the cross-examination of witnesses by the guardian ad litem, and was proper in any event as part of the obligation of a guardian ad litem to further the best interests of the child. *Interest of R. W. B.*, N.Dak., 241 N.W.2d 546 (1976).

█ Finally, CP contends that the district court erred in allowing a social worker employed by appellee to refresh his recollection through reference to a summary of appellee's records before responding to a question concerning the circumstances surrounding a placement of PP in foster care in April 1981. After refreshing his recollection without objection, the witness testified that the placement was made at CP's request, relayed through a third party and confirmed by CP, and that appellee complied with the request. Previously, the summary itself was not allowed to be introduced as an exhibit because it had not been first made available to CP's counsel pursuant to a pre-trial stipulation.

Rule 612, W.R.E., recognizes the use of a writing or object to refresh the memory of a witness while testifying.

---

shall state the factual information pertaining to the allegations in the petition, the social history and the present situation and environment of the child and parent. The social study shall not be excluded as evidence by reason of hearsay alone. The social study shall be made available to any party to the action upon request."

"If in the end the memory of the witness is refreshed in such manner that he affirms or adopts in his testimony the matter suggested by the questioner, the fact that the questioner could not introduce the matter itself becomes inconsequential. * * * " 3 Louisell and Mueller, Federal Evidence, § 348, p. 516.

Additionally, CP made no objection to the use of the summary to refresh the witness' recollection. Except that which involves jurisdiction or a fundamental right, a contention of error will not ordinarily be considered on appeal if the trial court has not first been apprised thereof and given an opportunity to react to it. The apprisal is usually accomplished by means of an objection together with the reasons therefor. *Alberts v. State*, Wyo., 642 P.2d 447 (1982); *Pure Gas & Chemical Company v. Cook*, Wyo., 526 P.2d 986 (1974); *Joly v. Safeway Stores, Inc.*, Wyo., 502 P.2d 362 (1972); *ABC Builders, Inc. v. Phillips*, supra; *Texas Gulf Sulpher Company v. Robles*, Wyo., 511 P.2d 963 (1973); *City of Rock Springs v. Police Protective Association*, Wyo., 610 P.2d 975 (1980); *Scherling v. Kilgore*, Wyo., 599 P.2d 1352 (1979); and *Nickelson v. People*, Wyo., 607 P.2d 904 (1980).

An issue of jurisdiction or of fundamental right is not involved in this ruling. Applying the test determinative of plain error, supra, there is no showing that a clear and unequivocal rule of law was violated or that CP was denied a substantial right to her material prejudice. The testimony from the refreshed recollection was only to the effect that CP requested foster home attention for PP during the time that she, CP, was hospitalized and that appellee complied with her request.

Affirmed.