Clyde F. STAGNER, d/b/a West Route Trading Company, Appellant (Petitioner),

v.

WYOMING STATE TAX COMMISSION and State Board of Equalization, Appellees (Respondents).

No. 83–186.

Supreme Court of Wyoming.

May 22, 1984.

Carol Herman, Wind River Legal Services, Inc., Fort Washakie, for appellant.

A.G. McClintock, Atty. Gen., and Ron Arnold, Asst. Atty. Gen. (argued), for appellees.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

CARDINE, Justice.

This appeal is from an order denying relief sought in a declaratory judgment action involving construction of the Wyoming cigarette tax statutes. The parties stipulated to the relevant facts. The court held against appellant on all issues.

We will affirm.

Appellant, Clyde Stagner is an enrolled member of the Shoshone tribe of Indians of the Wind River Indian Reservation. He owns and operates the West Route Trading Company located on the reservation. A substantial part of his business involves the sale of cigarettes to enrolled Indians, non-enrolled Indians, and non-Indians. He is not licensed, nor is he required to be licensed by the State of Wyoming to sell cigarettes since he is a member of the Shoshone tribe.

On March 15, 1981, the Wyoming State Tax Commission and State Board of Equalization, seized and sold twelve cases of cigarettes enroute to Mr. Stagner. This seizure was an agency action subject to judicial review; however, the request for review was not timely and therefore was dismissed. On June 9, 1982, the Wyoming State Tax Commission and State Board of Equalization seized thirteen cases of cigarettes enroute to Mr. Stagner. Appellant filed a declaratory judgment suit seeking a ruling that the statutes under which this action was taken by the State of Wyoming were unconstitutional. Then, pursuant to stipulation of the parties, appellant paid the tax on the cigarettes seized on June 9, 1982, and the State Board released the cigarettes to him.

Although appellant presents several issues on this appeal, there are just two issues which we must decide in resolving the case:

1. Does the statute impose the Wyoming cigarette tax upon the seller or upon the retail purchaser or consumer of the cigarettes?

2. Was the seizure of petitioners' cigarettes by the State legally justified under the facts of this case?

I

The United States Supreme Court recently clarified the law concerning state taxation on cigarette sales made on Indian reservations in *Moe v. Confederated Salish and Kootenai Tribes of Flathead Reservation*, 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976). The Court again said that an Indian vendor cannot be required to obtain a state license and that a cigarette sales tax cannot be imposed upon on-reservations sales by Indians to Indians. It held, however, that the State can lawfully impose a cigarette tax on sales by Indians to non-Indians. The Montana statute in question provided that the cigarette tax was a direct tax on the retail consumer, precollected for purposes of convenience and facility only. The Court in a policy discussion stated:

" * * * Since nonpayment of the tax is a misdemeanor as to the retail purchaser, the competitive advantage which the Indian seller doing business on tribal land enjoys over all other cigarette retailers, within and without the reservation, is dependent on the extent to which the non-Indian purchaser is willing to flout his legal obligation to pay the tax. Without the simple expedient of having the retailer collect the sales tax from non-Indian purchasers, it is clear that wholesale violations of the law by the latter class will go virtually unchecked." (Footnote and emphasis omitted.) 96 S.Ct. at 1645.

And continuing also stated:

"The State's requirement that the Indian tribal seller collect a tax validly imposed on non-Indians is a minimal burden designed to avoid the likelihood that in its absence non-Indians purchasing from the tribal seller will avoid payment of a concededly lawful tax. Since this burden is not, strictly speaking, a tax at all, it is not governed by the language of Mescalero [*Apache Tribe v. Jones*, 411 U.S. 145, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973)], dealing with the 'special area of state taxation.' We see nothing in this burden which frustrates tribal self-

government, see *Williams v. Lee*, 358 U.S. 217, 219–220, 79 S.Ct. 269, 270, 3 L.Ed.2d 251, 253 (1959), or runs afoul of any congressional enactment dealing with the affairs of reservation Indians, *United States v. McGowan*, 302 U.S. 535, 539, 58 S.Ct. 286, 288, 82 L.Ed. 410, 413 (1938): 'Enactments of the federal government passed to protect and guard its Indian wards only affect the operation, within the colony, of such state laws as conflict with the federal enactments.' See also *Thomas v. Gay*, 169 U.S. 264, 273, 18 S.Ct. 340, 343, 42 L.Ed. 740, 744 (1898). We therefore agree with the District Court that to the extent that the 'smoke shops' sell to those upon whom the State has validly imposed a sales or excise tax with respect to the article sold, the State may require the Indian proprietor simply to add the tax to the sales price and thereby aid the State's collection and enforcement thereof." 96 S.Ct. at 1646.

In *Washington v. Confederated Tribes of Colville Indian Reservation*, 447 U.S. 134, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980), the United States Supreme Court in resolving other questions relating to state taxation of cigarette sales reaffirmed the holding of *Moe v. Confederated Salish and Kootenai Tribes of Flathead Reservation*, supra, stating:

"Moe establishes several principles relevant to the present cases. The State may sometimes impose a nondiscriminatory tax on non-Indian customers of Indian retailers doing business on the reservation. Such a tax may be valid even if it seriously disadvantages or eliminates the Indian retailer's business with non-Indians. And the State may impose at least 'minimal' burdens on the Indian retailer to aid in enforcing and collecting the tax. * * * " (Footnote omitted.) 100 S.Ct. at 2080.

The Court held in *Washington v. Confederated Tribes of Colville Indian Reservation*, supra, that the exemption applicable to tribal members could not be extended to Indians who are non-members of the tribe. Washington's cigarette sales tax falls upon the first event which may constitutionally be subjected to it. The incident of the tax is on the seller in cases of sales by non-Indians to non-Indians. In a case where the retailer is exempt from the tax, the first taxable event is the use, consumption of or possession by a non-exempt purchaser.

The decisions in both United States Supreme Court cases were based on the fact that the applicable statutes provided for the incident of the tax to fall on the consumer. Both parties in this case agree that the State of Wyoming may not impose the tax upon appellant nor require him to obtain a state license for the sale of cigarettes. They also agree that sales by appellant to enrolled Indians of the Shoshone and Arapahoe tribes are exempt. Appellant contends that Wyoming's cigarette sales tax statutes provide that the incident of the tax is upon the wholesaler; that, therefore, as an enrolled Indian, he is exempt from this tax and it should not be enforced against him. The State contends that the Wyoming legislature imposed the tax upon the sale thereby placing the incidence of the tax upon the purchaser. Section 39–6–103, W.S.1977, Cum.Supp.1983, provides:

"(a) There is levied and shall be collected and paid to the board an excise tax of four-tenths of a cent ($.004) upon the sale of each cigarette sold by wholesalers.

"(b) Sales of cigarettes to any agency of the United States government, sales in interstate commerce or the taxation of any transaction prohibited by the United States Constitution are exempted from the provisions of this article but shall be reported to the board in the manner prescribed by it.

"(d) There is levied and shall be paid to the board an excise tax of forty one hundredths of a cent ($.0040) upon the use or storage by consumers of cigarettes in Wyoming but only if the tax imposed by subsections (a) and (b) of this section has not been paid." (There is no subsection (c) in this section as it appears in the printed acts.)

In 1977 the legislature revised the cigarette tax sales statutes. Prior to that time § 39–163, W.S.1957, Cum.Supp.1975, provided that:

"(a) There is hereby levied and shall be collected and paid to the state board of equalization an excise tax upon the sale of cigarettes by wholesalers of four mills on each cigarette; *provided*, however, that the burden of paying such tax shall be passed, through subsequent sales of the cigarettes taxed, to the ultimate purchasers and consumers of such cigarettes and such tax so passed shall be deemed a direct tax paid by the said ultimate purchasers and consumers." (Emphasis added.)

■ Appellant argues that the deletion of the proviso evidences legislative intent to shift the incidence of the tax from the consumer to the seller. We cannot agree with this proposition. The deletion could equally indicate a legislative determination that the proviso was unnecessary.

" * * * [I]t is a well-established principle that in construing a legislative enactment we must, if possible, ascertain the intent of the legislature from the wording of the statute. * * * " *Wyoming State Department of Education v. Barber*, Wyo., 649 P.2d 681, 684 (1982).

"All portions of the act must be read in pari materia, and every word, clause and sentence of it must be given effect * *." *Haddenham v. City of Laramie*, Wyo., 648 P.2d 551, 553 (1982).

"A basic tenet of our judicial system is that a statute must be read in light of its purpose. If a statute is clear on its face and the results produced by a literal reading help bring about the stated objective, we will not entertain strained constructions which impede the legislative policy. * * * " (Citation omitted.) *People v. Platte Pipe Line Company*, Wyo., 649 P.2d 208, 212 (1982).

The words must be given their plain and ordinary meaning. *Herring v. Welltech, Inc.*, Wyo., 660 P.2d 361 (1983). That meaning becomes obvious when applied to the facts in this case.

Section 39–6–101, W.S.1977, definitions, provides:

"(a) As used in this article:

"(i) 'Sale' * * * means any * * * transfer of * * * possession within the state * * *;

"(iii) Wholesaler means any person who:

"(A) Imports cigarettes into this state for sale * * *."

Appellant imported cigarettes into this state for sale and he was a *wholesaler*. He transferred possession of the cigarettes to non-Indians and that was a *sale*. Section 39–6–103, W.S.1977, supra, provides that "there * * * shall be *collected* * * * four-tenths of a cent ($.004) upon the *sale* of each cigarette sold by *wholesalers*." (Emphasis added.) It would be a strained construction of the statute for us to conclude that the legislature intended that the wholesaler *collect* the tax from himself upon the sale to a purchaser. We decline to adopt that construction. "Collect" is said to mean "to receive, gather, or exact from a number of persons or other sources," Webster's Third International Dictionary (1961). The plain meaning of the term "collect" is to obtain something from another. Here the legislative intent is clear. The appellant was to "collect" the tax from the purchaser. The words "shall be collected * * * upon the sale" places the incident of the tax upon the purchaser.

■ Subsection (b) of § 39–6–103, supra, provides that taxes are not to be collected on sales to a tax exempt agency. Appellant, though a wholesaler by definition, was tax exempt under this subsection. The tax by statute could not be imposed upon him, and this provision is further evidence of the legislative intent that the tax was upon the consumer. Every word, clause and sentence must be given meaning. A statute must be construed so that no part is inoperative or superfluous. *Thomson v. Wyoming In-Stream Flow Committee*, Wyo., 651 P.2d 778 (1982).

Appellant claims that his analysis of the cigarette sales tax statutes is supported by

the fact that the statutes are couched in terms of "wholesalers" not consumers. However, the 1977 revision is not significantly different from the 1957 act and amendments. The 1967 amendment specifically provided that the consumer would pay the tax. That article was also primarily couched in terms of wholesalers. The wholesaler receives a six percent discount because of the burden imposed upon him in affixing the stamps. It would be senseless for the legislature to give a discount to a person owing taxes for paying taxes that he owes. This discount evidences the fact that the tax was not upon the wholesaler but upon the purchasers and consumers. We note also that no distribution of the revenues are made pursuant to § 39–6–108, W.S.1977, until a monthly return is filed which shows sales. This indicates also a legislative intent to impose the tax upon the consumer.

Appellant contends that subsection (d) supports his position that the wholesaler is obligated to pay the tax. We construe this section as obligating the consumer personally to pay the tax if he has not complied with subsection (a) which requires payment of the tax to the wholesaler.

■ Therefore, we hold that the cigarette sales tax statutes require appellant to collect tax on cigarettes sold to non-Indians and to Indians who are not enrolled members of the Shoshone or Arapahoe tribes.

## II

The State Board on two occasions seized cigarettes purchased by and enroute to appellant. Section 39–6–106(a), W.S.1977, provides for seizure of cigarettes under certain circumstances.[1] Appellant contends that this statute is unconstitutional in that it improperly distinguishes between licensed and unlicensed wholesalers; it violates the due process clauses of the federal and state constitutions; and it did not authorize the seizure of appellant's cigarettes.

Appellant contends that the statute is unconstitutional because it does not provide for a notice or hearing. The record in this case confirms that appellant was notified of the seizure and that the cigarettes were returned to him the day after the seizure pending the outcome of this suit. A court is without jurisdiction to determine that a statute is irreconcilable with the constitution except

"* * * 'as it is called upon to adjudge the legal rights of litigants in actual controversies. In the exercise of that jurisdiction, it is bound by two rules, to which it has rigidly adhered: one, never to anticipate a question of constitutional law in advance of the necessity of deciding it; the other, never to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.' [Citation.] Kindred to these rules is the rule that one to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional. * * *" *United States v. Raines*, 362 U.S. 17, 80 S.Ct. 519, 522, 4 L.Ed.2d 524 (1960).

■ The United States Supreme Court held, in *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975), that

"* * * [a]s an aspect of justiciability, the standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf. The Art. III judicial power exists

---

**1.** Section 39–6–106, W.S.1977, provides in part: "(a) Any package of cigarettes found in this state without stamps, imprints or impressions affixed thereto as provided by this article are contraband goods and may be seized without a warrant by the board or any peace officer of this state when so directed by the board. This section does not apply to cigarettes in the original unopened shipping package in the possession of or in transit to a licensed wholesaler or to owners of cigarettes not willfully or intentionally evading the tax imposed by this article."

only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally. A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action * * *.' " (Citations omitted.)

In *Alberts v. State*, Wyo., 642 P.2d 447 (1982), appellant claimed that a statute was unconstitutional on its face because it did not set forth proper procedures and guidelines. We held that appellant did not have standing to raise those issues because

" * * * [t]he constitutionality of a statute may not be attacked by one whose rights are not adversely affected by the operation thereof. * * * " Id. at 452.

In that case, the procedures appellant was protesting were not applied against him. The constitutionality of a statute can only be challenged if it is applied to or is about to be applied to the party contesting its validity. *Walgreen Co. v. State Board of Equalization*, 70 Wyo. 193, 246 P.2d 767 (1952). We have stated that the rule with regard to standing is one that

" * * * with the limited exception of challenges to statutes that broadly prohibit speech protected by the First Amendment, a party must demonstrate the matter in which his own rights are adversely affected in light of the circumstances before the court in order to present his constitutional challenge." *Armijo v. State*, Wyo., 678 P.2d 864, 868 (1984).

In this case, appellant was notified of the seizure and was given an opportunity for a hearing. Therefore, he does not have standing to contend that the statute is unconstitutional for lack of procedural due process because the alleged inadequacies of the statute were not applied to him; we will not decide the constitutionality of the statute as it might be applied to third parties or to hypothetical situations.

■ Appellant also contended that the seizure was wrongful and not authorized under § 39–6–106, W.S.1977, supra. The statute provides that cigarettes found in this state without stamps required by law may be seized. Two exemptions from this provision are granted. First, the section does not apply to cigarettes in the original unopened shipping package in possession of or in transit to a licensed wholesaler. Appellant is not a licensed wholesaler and not exempt under this language of the statute. He claims the statute discriminates against him because he is an enrolled Indian who is not required to be licensed and, therefore, it is unconstitutional. However, appellant's cigarettes were not seized because he was unlicensed, but because he was evading the cigarette tax. Seizure is not a necessary sanction for licensed wholesalers. Other remedies are available, such as license revocation, fines, and imprisonment.[2] By virtue of appellant's status as an Indian, he is exempt from licensing and its attendant burdens. However, he is not exempt from a lawful compliance with the state taxing statutes. The statute is not discriminatory because it provides different sanctions in different circumstances for failure to comply. There is no discrimination against appellant by the seizure to

---

**2.** Section 39–6–102(c), W.S.1977, provides:

"(c) The board may revoke the license of any wholesaler violating any provision of this article after a hearing. No license shall be issued *to a wholesaler for two (2) years following* revocation of his license."

Section 39–6–110, W.S.1977, provides:

"(a) The following acts are misdemeanors punishable by a fine of not more than one hundred dollars ($100.00) or imprisonment in the county jail for not more than six (6) months or both:

"(i) Selling or distributing cigarettes as a wholesaler without a license;

"(ii) Selling, offering to sell, displaying for sale or possessing with intent to sell cigarettes without proper stamps, imprints or impressions;

"(iii) Evading or aiding or abetting any person to evade the payment of the taxes imposed by this article;

"(iv) Making any false or fraudulent return.

"(b) Each act in violation of subsection (a) of this section is a separate offense.

"(c) The penalties specified in this section are in addition to the provisions of W.S. 39–6–106."

enforce the lawful exercise of tax collection. This was a lesser sanction than would have been imposed upon a licensed wholesaler who was willfully and intentionally evading the tax.

A second exemption is granted to owners of cigarettes not willfully or intentionally evading the tax. This exemption was not available to appellant who had known for several years that the State of Wyoming contended that he was obligated to collect the tax when he sold cigarettes to non-Indian consumers. The State's interest in resolving this question necessitated the seizure. The United States Supreme Court held in *Washington v. Confederated Tribes of Colville Indian Reservation*, supra, 100 S.Ct. at 2085, that

> " * * * [a]lthough the cigarettes in transit are as yet exempt from state taxation, they are not immune from seizure when the Tribes, as here, have refused to fulfill collection and remittance obligations which the State has validly imposed. * * * "

Having found the tax is upon the purchaser or consumer, that the statutes providing for the tax are constitutional, and that the seizure was lawful, the order of the district court is

Affirmed.