No. 48,462

STATE OF KANSAS, *Appellee*, v. ROBERT L. BURNETT, *Appellant.*

(563 P.2d 451)

Opinion filed April 9, 1977.

*Jack W. Shultz,* of Dodge City, argued the cause and was on the brief for the appellant.

*Daniel L. Watkins,* assistant attorney general, argued the cause, and *Curt T. Schneider,* attorney general, and *Terry J. Malone,* county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: Robert L. Burnett appeals from convictions of burglary and felony theft under K.S.A. 21-3715 and K.S.A. 21-3701 (*a*). Two points are before us: whether the trial court erred in denying Burnett a psychiatric examination at public expense by a physician of his own choosing; and whether K.S.A. 22-3603 (now K.S.A. 1976 Supp.), providing for interlocutory appeals by the state and not by the accused, constitutes invidious discrimination and is a denial of due process and the equal protection of the laws to this defendant.

The facts of the occurrence out of which the crime arose have no bearing on the issues raised and need not be detailed here. Burnett does not challenge the sufficiency of the state's evidence.

Defendant was found to be indigent, and counsel was ap-

pointed for him. At arraignment he pled not guilty, and not guilty by reason of insanity, and the court on motion authorized his counsel to incur the costs of procuring the services of a qualified psychiatrist, such costs to be defrayed by the state indigent defendant fund pursuant to K.S.A. 22-4508.

Some 60 days thereafter, counsel applied for specific authority to procure the services of Dr. Charles Wellshear and the Wesley Medical Center in Wichita for a psychiatric examination. Counsel was unable to estimate the cost of the requested services. After hearing argument, the trial court found that the request was not reasonable and denied the motion; but the court did provide for an examination, at public expense, at either of three state facilities.

Burnett then moved this court for leave to take an interlocutory appeal. The motion was denied for lack of jurisdiction on June 6, 1975.

Thereafter, defendant selected the Topeka State Hospital and counsel made an appointment for his client to be examined by Dr. Tarnoff on August 20. Defendant arrived at the appointed time but Dr. Tarnoff was not there. However, defendant was examined by Dr. Charles E. Staunton, a staff psychiatrist at the Topeka State Hospital, and a lengthy report, signed by Dr. Staunton and four other staff physicians, including Dr. W. Walter Menninger, was prepared on August 25 and forwarded to court and counsel. While the report was not couched in the language of *M'Naghten* (see *State v. Andrews*, 187 Kan. 458, 466, 357 P. 2d 739, and *State v. Pyle*, 216 Kan. 423, 440, 532 P. 2d 1309), it clearly and unmistakably expresses the opinion that Burnett was not psychotic, was not suffering from any thought disorder, and was legally sane.

The report was received less than a week prior to trial. On the morning of trial, defendant moved for a continuance in order that he might secure an examination by a psychiatrist of his own choosing, and requested that the court grant counsel authority to engage such an expert, the cost to be paid by the Aid to Indigent Defendants Fund. The motion was denied and trial proceeded; defendant was convicted, and appeals.

Defendant first contends that under K.S.A. 22-3219 (2) he had an absolute right to an examination by a physician of his own choosing at public expense. The statute reads:

"A defendant who files a notice of intention to rely on the defense of insanity thereby submits and consents to abide by such further orders as the court may make requiring the mental examination of the defendant and designating the place of examination and the physician or physicians by whom such examination shall be made. No order of the court respecting a mental examination shall preclude the defendant from procuring an examination by a physician of his own choosing. A report of each mental examination of the defendant shall be filed in the court and copies thereof shall be supplied to the defendant and the prosecuting attorney."

This statute must, of course, be read in conjunction with K.S.A. 22-4508, which provides:

"Counsel for a defendant who is financially unable to obtain investigative, expert or other services necessary to an adequate defense in his case may request them in an *ex parte* application addressed to the magistrate or court where the action is pending. Upon finding, after appropriate inquiry in an *ex parte* proceeding, that the services are necessary and that the defendant is financially unable to obtain them, the magistrate or court shall authorize counsel to obtain the services on behalf of the defendant. . . . The court shall determine reasonable compensation for the services and approve payment to the organization or person who rendered them . . ."

K.S.A. 22-3219, as we read it, merely provides that when an insanity defense is raised, the defendant is deemed to consent to orders of the court requiring mental examinations, and such orders as the court may make do not prevent the defendant from securing examinations by physicians other than those designated by the court. We do not read the statute as does the defendant. We hold that the statute does not make it mandatory upon the trial court to authorize the retention at public expense of any psychiatrist an indigent defendant may select simply because notice of an insanity defense has been given.

The authorization of supporting services, whether they be investigative, expert or otherwise, is a matter within the sound discretion of the trial court.

Chief Justice Price, speaking for a unanimous court in the last opinion he wrote, *State v. Frideaux*, 207 Kan. 790, 487 P. 2d 541, said:

"K.S.A. 1970 Supp. 22-4508, being a section of the act relating to 'Aid to Indigent Defendants,' and which provides for the furnishing of investigative services to an indigent defendant under circumstances set forth in the statute, does not give to a defendant an absolute right to such services merely upon application being made therefor. Such services are to be provided only upon a finding by the court, after appropriate inquiry, that they are necessary to an

adequate defense. A finding necessarily involves the exercise of the sound discretion of the court—and a denial of an application will not be disturbed in the absence of a showing that such discretion has been abused to the extent that a defendant's substantial rights have been prejudiced thereby." (Syl. 1.)

Later, in *State v. Campbell*, 210 Kan. 265, 273, 274, 275, 500 P. 2d 21, we said:

".  .  . [T]he appellant moved the trial court to provide  .  .  . funds for an examination  .  .  . by Dr. Ralph L. Drake and by the Wichita Psychiatric Center regarding his mental state, before, during and after the crimes with which he was charged  .  .  . The request for funds was denied  .  .  .

"This court has held that the granting or denial of a motion to provide supporting services to counsel for an indigent defendant in a criminal prosecution is a matter within the discretion of the trial court. Its ruling will not be disturbed in the absence of a showing that the exercise of such discretion has been abused to the extent of prejudicing the substantial rights of the defendant. (*State v. Taylor*, 202 Kan. 202, 447 P. 2d 806; *State v. Young*, 203 Kan. 296, 454 P. 2d 724; and *State v. Frideaux*, 207 Kan. 790, 487 P. 2d 541.)

"K.S.A. 1971 Supp. 22-4508 now provides for investigative services for indigent defendants, but the trial court must determine such services are 'necessary,' which is in accordance with prior case law.

"In July, 1969, when this case came on for trial the appellant renewed his request for funds and K.S.A. 1971 Supp. 22-4508 authorizing such expenditures, had become operative. (L. 1969, ch. 291, sec. 8, effective July 1, 1969.)

"Both before and after the effective date of 22-4508, *supra*, the burden was upon the appellant to show that the request for services was necessary, and on appeal that the denial of such request by the trial court prejudiced his substantial rights.

"The mere hope or desire to discover some shred of evidence when not coupled with a showing that the same is reasonably available and necessary for a proper defense does not support a claim of prejudicial error. (*State v. Taylor*, supra.)

"When a similar issue was raised before the Tenth Circuit Court of Appeals in *Watson v. Patterson*, 358 F. 2d 297 (10th Cir. 1966), the Court of Appeals noted that it was unable to find any cases holding that the appointment of experts was a constitutional requirement; rather, the court held that requests for supporting services were to be measured by the requirements of due process, and the test of due process was 'fundamental fairness.' "

Our recent cases state and apply the same rules. *State v. Bradford*, 219 Kan. 336, 339, 548 P. 2d 812; and *State v. Lee*, 221 Kan. 109, 115, 558 P. 2d 1096.

Here the defendant requested private psychiatric services, and no estimate of the probable cost was furnished the trial court. The only showing of the need for such services was the statement by counsel that according to witnesses, Burnett "was not himself"

on the night of the occurrence, and that his acts were "completely out of character." The report from the staff at the Topeka State Hospital did not indicate any need for further examination and evaluation. During the trial, Burnett described the events of the occurrence in great detail, more than 40 pages in the record being devoted to his testimony. Certainly no mental infirmity or aberration is indicated in the record before us.

Had the court authorized the services of Dr. Wellshear as requested, and had he found the defendant sane, then conceivably the defendant could have sought the services of one psychiatrist after another in the search for expert testimony supportive of an insanity defense. This is not required under our statutes.

We hold that under the showing made, the trial court did not abuse its discretion in denying defendant's motion for an examination by a physician of his choice, at an unknown and unestimated cost, when highly competent psychiatrists were available for the purpose through state facilities.

We next turn to defendant's claim that the failure of the statutes, and the earlier ruling of this court, to permit him to take an interlocutory appeal, while such an appeal is permitted the state under some circumstances, constitutes invidious discrimination and a denial of due process and equal protection of the laws.

K.S.A. 22-3603 provides for interlocutory appeals by the state in certain limited circumstances: where, prior to the commencement of a criminal trial, a warrant or search warrant is quashed, or where evidence, a confession or an admission is suppressed. As the note of the Judicial Council appended to this statute observes, the purpose of this section is to permit appellate review of pretrial rulings which may be determinative of the case. If the trial court suppresses essential evidence, an appeal by the state after trial and acquittal would resolve the legal questions—but the double jeopardy clause would bar retrial.

As Justice Fontron stated in a recent opinion:

"The right to an appeal is neither a vested nor constitutional right, but is strictly statutory in nature. It may be limited by the legislature to any class or class of cases, or in any manner, or it may be withdrawn completely. It lies within the legislative domain to determine from what orders or judgments an appeal may be taken. . . ." *In re Waterman*, 212 Kan. 826, 830, 512 P. 2d 466.

Defendant concedes that the state is not required to establish avenues of appellate review, but argues—and we agree—that:

". . . [O]nce established, these avenues must be kept free of unreasoned distinctions that can only impede open and equal access to the courts. . . ." *Williams v. Oklahoma City*, 395 U.S. 458, 459, 23 L. Ed. 2d 440, 89 S. Ct. 1818; accord, *Hamrick v. Norton*, 322 F. Supp. 424, 425 (D. Kan. 1970), aff'd 436 F. 2d 940 (10th Cir. 1971).

The distinction between the state and the accused is not unreasoned. It serves a valid and legitimate public purpose to permit the state access to appellate review when matters essential to a prosecution are quashed or suppressed prior to trial. An individual defendant, unlike the state, may secure complete appellate review of all adverse rulings, and may secure effective relief, through a single appeal after trial, without constitutional impediment.

Neither the equal protection clause nor the due process clause compels a contrary conclusion. In discussing contentions not dissimilar from those here advanced, we said in *State v. Lee*, 221 Kan. 109, 558 P. 2d 1096:

"The equal protection and due process clauses 'emphasize the central aim of our entire judicial system—all people charged with crime must, so far as the law is concerned, "stand on an equality before the bar of justice in every American court." ' *Griffin v. Illinois*, 351 U.S. 12, 17, 100 L. ed. 891, 76 S. Ct. 585. We have found no cases, and counsel cite none, which require the state to furnish the defendant with an equal amount of funds and services as are within the reach of the state. . . . The thrust of the equal protection clause, in the area in which we are here interested, is to require that all persons be treated alike under like circumstances and conditions. . . ." (pp. 113, 114.)

As Chief Judge Murrah puts it, the requirements of the due process clause are satisfied ". . . when one charged with a state offense is tried in a state court of competent jurisdiction 'in accordance with constitutional procedural safeguards,' i.e., established modes of procedure. . . ." *Devine v. Hand*, 287 F. 2d 687 (10th Cir. 1961). Here there was no deprivation of due process.

Legislative classifications "honestly designed to protect the public interest against evils which might otherwise occur, are to be upheld unless they be unreasonable, arbitrary or oppressive." *State v. Weathers*, 205 Kan. 329, 331, 469 P. 2d 292. The class set apart by K.S.A. 22-3603, the state, is reasonable due to the double jeopardy provisions. The limited right to take interlocutory appeals granted to the state serves the public interest, and does not in the least prejudice the right of a defendant to have claimed trial

errors reviewed at the appropriate stage of the proceedings. We find no error. The judgment is affirmed.