**Barry SODERGREN, Appellant
(Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. 85–71.

Supreme Court of Wyoming.

Feb. 26, 1986.

Susan K. Overeem and Patricia Nagel, Casper, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John Renneisen, Sr. Asst. Atty. Gen., Michael A. Blonigen, Sylvia Lee Hackl, Asst. Attys. Gen., Cheyenne and J. Scott Evans, Natrona County Dist. Atty., Casper, for appellee.

Before THOMAS, C.J., and BROWN, CARDINE, ROONEY (Retired), and GUTHRIE (Retired), JJ.

BROWN, Justice.

Appellant was convicted by a Natrona County jury of two counts of manslaughter and sentenced to the penitentiary. In appealing the judgment and sentence appellant raises as issues:

"I

"Is *State v. Thomas* still controlling and thus the District Court erred in denying Appellant's motion to dismiss for lack of jurisdiction?

"II

"Is § 6–4–107 W.S. 1977 unconstitutional, therefore Appellant could not be charged under that statute?

"III

"Does Appellant's trial and conviction of manslaughter violate the Ex Post Facto and Due Process Clause of the United States Constitution and Wyoming Constitution?

"IV

"Was Appellant's right to a speedy trial as guaranteed by the United States Constitution and the Wyoming Constitution violated?

"V

"Did the District Court err in refusing to give Appellant's requested instructions on the lesser included offense of vehicular homicide?

"VI

"Did the District Court err in refusing to give Appellant's requested instructions P, K, and J?

"VII

"Should Appellant have been sentenced under the penalty provision of § 31–5–1117 W.S. 1979 or § 6–2–106 W.S. 1983?"

We will affirm.

In a collision August 23, 1982, between a truck driven by appellant Barry Sodergren and a Pinto automobile driven by Mia Olsen, Miss Olsen and a passenger, her mother, were killed. The collision took place west of Casper at the intersection of Highway 20–26 and Ten Mile Road. Appellant testified that he never saw the Olsen vehicle and that he failed to stop at the stop sign on Ten Mile Road before entering the highway. He also testified that he slowed down to 20–25 miles per hour before entering the intersection; however, other witnesses testified that he was traveling 60 to 75 miles per hour and that he never slowed down before entering the intersection. Appellant's own witness, a traffic accident analyst, testified that appellant's minimum speed upon entering the intersection was 32.5 miles per hour, and that it was "reasonably possible" that he could have been driving as fast as 70 miles per hour.

On September 10, 1982, a criminal complaint was signed, charging appellant with two counts of involuntary manslaughter. After a preliminary hearing on September 19, 1982, appellant was bound over to Natrona County District Court; and on October 1, 1982, an information was filed in district court. At the arraignment on No-

vember 9, 1982, appellant pled not guilty. On the same day, the district court wrote a letter to counsel expressing doubts regarding the court's jurisdiction over the case. A motion to dismiss was filed by appellant November 12, 1982, questioning the jurisdiction of the district court. The district court issued a decision letter, November 16, 1982, ruling that the court had no jurisdiction over the matter. A bill of exceptions in response to the district court decision letter was entered by the state on November 24, 1982. An order of dismissal was signed and entered December 15, 1982.

On June 8, 1983, this court entered an order denying the state's application to file a bill of exceptions; and on June 10, 1983, the attorney general filed a petition for a writ of certiorari requesting this court to review the district court's order dismissing the manslaughter charges. On June 28, 1983, this court entered an order granting certiorari for the purpose of reviewing the district court's ruling that appellant could not be prosecuted under § 6–4–107, W.S. 1977 (Cum.Supp.1979). On June 26, 1984, this court rendered its decision in which a majority held that Barry Sodergren could be charged under § 6–4–107, reversed the district court's order, and remanded the case to the district court for trial. *State v. Sodergren*, Wyo., 686 P.2d 521 (1984).

For clarification the following dates after remand are set out: The trial date had been set for August 27, 1984; on August 23, 1984, the district attorney filed a motion for continuance of the trial date to October 1, 1984. Over the objection of appellant, the trial date was continued to September 24, 1984. On September 4, 1984, appellant filed a motion to dismiss for lack of speedy trial; and on September 13, 1984, the district court denied appellant's motion to dismiss. On September 18, 1984, appellant filed a motion to dismiss for lack of jurisdiction by the district court and a motion to compel discovery. Appellant also filed an application for a stay of proceedings in district court to enable him to apply for a writ of certiorari to the Wyoming Supreme Court for review of the district court's de-

nial of appellant's motion to dismiss for lack of speedy trial.

The trial commenced on September 24, 1984; on September 25, 1984, an order was entered denying appellant's pending motions. On October 2, 1984, this court entered a nunc pro tunc order denying appellant's petition for writ of certiorari and application for stay of proceedings. On September 27, 1984, a verdict was returned finding Barry Sodergren guilty of two counts of manslaughter. On February 15, 1985, appellant was sentenced to a term in the penitentiary. On February 25, 1985, notice of appeal was filed by appellant.

I

In his first assignment of error appellant invites us to reconsider *State v. Sodergren*, supra, (hereinafter *Sodergren I*). In that case a divided court held that manslaughter, under § 6–4–107, W.S.1977 (Cum.Supp. 1979), was the appropriate charge rather than vehicular homicide, under § 31–5–1117(a), (b), W.S.1977 (Cum.Supp.1982). Because the majority expressed two different reasons for the holding, counsel has characterized *Sodergren I* as a plurality opinion.

Two justices in the majority determined that there was an infirmity in a portion of the vehicular homicide statute which rendered that portion inoperative. Because of this infirmity appellant could not be prosecuted under the vehicular homicide statute, and therefore it was proper to prosecute him under the manslaughter statute. One justice in the majority determined that the vehicular homicide statute could be read together with the manslaughter statute to the end that both could stand. This case is the latest chapter in the torturous history of the relationship of the vehicular homicide statute to the manslaughter statute. We are not optimistic that this case will be the final chapter.

In *Thomas v. State*, Wyo., 562 P.2d 1287 (1977), we held that the vehicular homicide statute and the "culpable neglect" or "criminal carelessness" portion of the man-

slaughter statute proscribed the same conduct, provided different penalties for the same conduct, and were therefore repugnant. In *Bartlett v. State*, Wyo., 569 P.2d 1235 (1977), we held that the vehicular homicide statute had impliedly repealed the "unlawful act" portion of the manslaughter statute, at least to the extent that an act "malum prohibita" was involved.

In *Lopez v. State*, Wyo., 586 P.2d 157, 160 (1978), in an effort to resolve the recurring conflict between the vehicular homicide and the manslaughter statutes, this court held:

"In order to level out and bring order to a chaotic state of the law, we hold that all vehicular homicides, short of murder and voluntary manslaughter, are prosecutable exclusively as a violation of § 31–5–1115, W.S.1977. We overrule all decisions of this court to the contrary. * * *"

Perhaps the Lopez case would have finally settled the vehicular homicide statute-manslaughter statute problem except the statutes were amended. For a more detailed history of the problem reconciling vehicular homicide and manslaughter, see *Sodergren I.*

It is significant that in *Thomas*, *Bartlett* and *Lopez*, supra, this court determined that a manslaughter charge was improper because an existing viable vehicular homicide statute proscribed the same conduct, but provided different penalties, and was therefore repugnant. In those cases it is succinctly stated that an existing viable vehicular homicide statute barred a manslaughter charge and conviction for vehicular death. In the absence of a vehicular homicide statute, a prosecution for manslaughter would have been proper. In *Sodergren I* we held that a vehicular homicide statute did not bar a conviction for manslaughter. Two different reasons were expressed by the majority as to why the vehicular homicide statute was not a bar to prosecution for manslaughter.

We have reviewed our holding in *Sodergren I* and are not persuaded that we should reverse our determination. Under the circumstances, manslaughter was the proper charge.[1]

## II

Appellant contends in his second assignment of error that the manslaughter statute under which he was prosecuted, § 6–4–107, W.S.1977 (Cum.Supp.1982), is unconstitutional.[2] This issue was raised for the first time on appeal. In *Jahnke v. State*, Wyo., 692 P.2d 911, 928 (1984), we stated:

"* * * Our rule is that in the absence of fundamental error affecting a substantial right of the appellant or involving the jurisdiction of the court, we do not consider questions sought to be raised for the first time on appeal. *Hopkinson v. State*, Wyo., 664 P.2d 43 (1983), cert. denied 464 U.S. 908, 104 S.Ct. 262, 78

---

1. Appellant suggests that because *Sodergren I* was a plurality opinion the vehicular homicide statute in effect at that time was not effectively declared unconstitutional, although the plurality opinion said it was. We are not disposed to discuss that suggestion, which is now academic. The current vehicular homicide statute is § 6–2–106, W.S.1977 (Cum.Supp.1985). This statute replaced § 31–5–1117(a), (b), W.S.1977 (Cum. Supp.1982), the latter statute having been declared unconstitutional in *Sodergren I.*

2. In *State v. Sodergren*, 686 P.2d 521 (1984), (*Sodergren I*), this court specifically determined that § 6–4–107, W.S.1977 (Cum.Supp.1979), was the proper statute under which to prosecute appellant. Appellant has not persuaded us that we should now reverse ourselves and declare this statute unconstitutional.

In *State v. Wilson*, 76 Wyo. 297, 301 P.2d 1056 (1956), the constitutionality of the manslaughter statute, § 9–205, W.C.S.1945, was attacked. There, appellant contended that the statute was unconstitutional as a denial of due process in that the terms "unlawful act," "culpable neglect" and "criminal carelessness" were so vague and ambiguous as to provide no ascertainable standard of guilt. In *Wilson* the court reaffirmed its prior determination and declined to declare the manslaughter statute unconstitutional. Here, the manslaughter statute under which appellant was charged, § 6–4–107, W.S.1977 (Cum.Supp. 1982), also contains the terms "unlawful act," "culpable neglect" and "criminal carelessness." However, *State v. Wilson*, supra, is or only slight precedential value because the manslaughter statute has been amended since the *Wilson* case.

L.Ed.2d 246 (1983); *Nickelson v. People,* Wyo., 607 P.2d 904 (1980); and *Nisonger v. State,* Wyo., 581 P.2d 1094 (1978). Furthermore, unless plain error is present, questions concerning the constitutionality of a statute are not considered on appeal if the party presenting them failed to present or argue the contentions in the trial court. * * * "

There is no jurisdictional problem here. Furthermore, appellant has not argued that point, nor do we see a fundamental error in trying appellant under the manslaughter statute given the circumstances of this case. It does not appear that the plain error doctrine, as we explained it in *Hampton v. State,* Wyo., 558 P.2d 504 (1977), is applicable here. It is significant that appellant does not argue plain error.

Discussing the constitutionality of the manslaughter statute applicable here, § 6–4–107, W.S.1977 (Cum.Supp.1982), would have little, if any, precedential value in that the manslaughter statute has been amended several times, and is now § 6–2–105, W.S.1977 (Cum.Supp.1985).[3] In urging that § 6–4–107 is unconstitutional, appellant, in effect, again invites us to reexamine our determination in *Sodergren I.* Again, we are not persuaded we should do that; and for the reasons stated, decline to discuss the constitutionality of § 6–4–107.

### III

■ In appellant's third issue he contends that *Sodergren I* effected an unforeseeable expansion of narrow and precise statutory language by judicial interpretation, and departed from the position taken by this court in the *Thomas, Bartlett* and *Lopez* cases. He complains that by allowing the manslaughter charge to stand in *Sodergren I,* we expanded the criminal liability to which he was exposed, and by applying the decision retroactively we created an ex post facto law.[4] Appellant's argument is based on *Bouie v. Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964). An examination of *Bouie* and later cases, however, indicates that the *Bouie* doctrine does not preclude appellant from being tried for manslaughter.

In *Bouie v. Columbia,* supra, two black college students entered a segregated lunch counter in Columbia, South Carolina. When asked to leave they refused to do so; they were subsequently arrested, and charged with violating a South Carolina criminal trespass statute. After their arrest, the South Carolina Supreme Court ruled that remaining on the premise after a request to leave constituted criminal trespass. Before that time, South Carolina decisions had indicated a trespassory entry was necessary to conviction. Merely remaining on the premises after a request to leave had not previously been deemed sufficient to constitute a crime. Although the students' entry to the lunch counter had been made before the court's decision and had not been trespassory, the South Carolina Supreme Court sustained the conviction by retroactive application of its new decision. The United States Supreme Court reversed, holding that a judicial decision could not be applied retroactively if the decision interpreted a narrow and precise statute in an expansive manner which could not be foreseen. Specifically, the

3. In 1982 the manslaughter statute was amended and renumbered by an act of the legislature (Wyoming Criminal Code of 1982), Ch. 75, S.L. of Wyoming, 1982 (§ 6–2–105), effective July 1, 1983. However, before the effective date of this amended statute the manslaughter statute was again amended, Ch. 171, S.L. of Wyoming, 1983 (§ 6–2–106), with an effective date of July 1, 1983; thus, the 1982 amendment never became the state law. The statute was again amended, Ch. 215, S.L. of Wyoming, 1985 (§ 6–2–106), and became effective May 23, 1985.

4. We note initially that appellant phrases the issue in terms of ex post facto laws. Technically, ex post facto prohibitions in the United States and Wyoming Constitutions apply to actions by the legislative branch of government and do not apply to judicial decisions. *Marks v. United States,* 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977); and *Frank v. Mangum,* 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969 (1915). However, as will be illustrated by *Bouie v. Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964), similar considerations do apply to judicial decisions through the due process clause.

Court found that the South Carolina decision had rendered the students' conduct criminal when it had been noncriminal at the time of the incident. The Court said the defendants were deprived of fair warning that their actions were criminal since it was unforeseeable that the scope of the statute might be expanded in such a manner.

■ Despite this holding, the *Bouie* case cannot be read to prohibit all retroactive application of judicial decisions. For example, this doctrine clearly does not apply if a state court is merely interpreting a statute for the first time. Furthermore, where there is no expansive decision in derogation of existing law there can be no foreseeability problem, or more succinctly, a fair warning problem. Retroactive application of a judicial decision is not improper if the statute itself has already provided fair warning to the defendant. *Thompson v. Gaffney*, 540 F.2d 251 (6th Cir.1976).

■ We now turn to an application of the principles in *Bouie* to the present case. Because the decision in *Sodergren I*, that appellant could be charged with manslaughter, was based on two separate theories, we will discuss both the plurality and the specially concurring opinion in light of the principles enunciated in *Bouie*. In the plurality opinion, authored by Chief Justice Rooney, it was held that the vehicular homicide statute in effect at the time of appellant's conduct was unconstitutional. This statute provided:

"(b) Whoever, *except when the violation of law involves culpable neglect or criminal carelessness, unlawfully and unintentionally, but with a conscious disregard of the safety of others,* causes the death of another person while engaged in the violation of any state law or ordinance applying to the operation or use of a vehicle or to the regulation of traffic, except those laws or ordinances relating to conduct set forth in subsection (a) of this section, is guilty of homicide by .vehicle when the violation is the proximate cause of death and upon conviction thereof, shall be fined not more than two thousand ($2,000.00) dollars or

imprisoned in the county jail for not more than one (1) year, or both." (Emphasis added). § 31–5–1117(b), W.S.1977 (Cum.Supp.1982).

The plurality found the two emphasized clauses to be contradictory, and on that basis found the statute to be vague and ambiguous. For these reasons, the plurality held that the statute was "unconstitutional and inoperative." Having found the vehicular homicide statute to be unconstitutional, the plurality then determined that: "The only statute under which prosecution could be had was the manslaughter statute under which respondent was charged." *Sodergren I*, supra, at 527.

Appellant contends that this holding was an unforeseeable reversal of *Lopez v. State*, supra. We cannot agree. The reason for the Lopez ruling was because the two statutes proscribed the same conduct. It was unfair to subject some defendants to misdemeanors and others to a felony. This principle was recognized in *Sodergren I*.

*Sodergren I* did not overrule *Lopez*. In fact, we recognized in *Lopez* that conduct such as appellant's did fall within the manslaughter statute. However, in *Lopez* we found that the manslaughter statute had been impliedly repealed by adoption of the vehicular homicide statute governing the same conduct. The vehicular homicide statute at issue in *Lopez* was later repealed, and was replaced by the statute deemed inoperative in *Sodergren I*. Thus, after declaring the vehicular homicide statute unconstitutional, only one valid statute remained to proscribe appellant's conduct, the manslaughter statute.

The plurality opinion in *Sodergren I* was not inconsistent with prior case law. This court was interpreting the vehicular homicide statute for the first time, so there was no prior interpretation upon which to rely. *Foster v. Barbour*, 613 F.2d 59 (4th Cir. 1980); and *Crosby v. Ellsworth*, 431 F.2d 35 (9th Cir.1970). Furthermore, there was no judicial expansion of criminal liability under the manslaughter statute. Conduct such as appellant's has long been recog-

nized as falling within the ambit of the manslaughter statute. In part I we indicated that the only bar to prosecution for manslaughter in the *Thomas, Bartlett* and *Lopez* cases was an existing, viable vehicular homicide statute. Here, there was no existing, viable vehicular homicide statute. Finally, there is no statutory conflict here since the vehicular homicide statute was deemed inoperative. For this reason, the Bouie doctrine is not fulfilled. There is no judicial decision which interprets narrow and precise language in an expansive manner. Rather, there is an initial interpretation in *Sodergren I* of a statute containing vague and imprecise language.

Nor is *Bouie* violated by the rationale of the specially concurring opinion in *Sodergren I.* There, although one justice agreed that appellant could be charged with manslaughter, his theory was different from that of the plurality. He argued that the two statutes could be read together to proscribe different conduct. *Sodergren I,* supra, (Thomas, J., specially concurring). Much of what we have said regarding the plurality opinion is applicable to the specially concurring opinion. This was an initial interpretation of a new statute. The interpretation was consistent with the prior decisions of this court.

Finally, there was no fair warning problem under either the plurality or specially concurring opinion. Appellant had fair warning that his conduct was criminal. The opinion in *Sodergren I* did not constitute a "radical and unforeseeable departure from existing law." *United States v. Wilder,* 680 F.2d 59, 60 (9th Cir.1982). Certainly any claim that this was a settled area of the law in Wyoming is untenable in light of our opinions and the activity of the legislature in recent years.

Furthermore, this court's opinion in *Sodergren I* did not render legal conduct illegal, nor does appellant so argue. He does, however, complain that his conduct now falls under a different statute. The observations of the Eighth Circuit seems particularly appropriate in this case.

" * * * His position, reduced to its simplest terms, is that he would be convicted for kidnapping only, rather than for kidnapping for ransom. This kind of reliance interest is not, in our view, entitled to a great deal of weight. When a person does an act that he well knows to be a violation of some law, and when a statute is later interpreted to cover his conduct in a way that does not do violence to the ordinary understanding of the English language, the Fourteenth Amendment is not offended." *Knutson v. Brewer,* 619 F.2d 747, 750–751 (8th Cir.1980). See also, *Welton v. Nix,* 719 F.2d 969, 970 (8th Cir.1983).

For all of the reasons stated above, we are not persuaded by appellant's claim.

## IV

Appellant's fourth assignment of error raises a speedy trial problem. The United States Supreme Court has recognized that, "[B]y virtue of the Fourteenth Amendment, the Sixth Amendment right to a speedy trial is enforceable against the states as 'one of the most basic rights preserved by our Constitution.' * * * " *Smith v. Hooey,* 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969).

Appellant was charged with manslaughter on September 10, 1982; he was ultimately tried on this charge September 24, 1984. On the surface, a period of about twenty-five months between a complaint and trial would seem unusually long. However, most of this twenty-five months involved proceedings in the Wyoming Supreme Court. In the forepart of this opinion we detailed the circuitous history of this case, which reveals that from December, 1982 until June, 1984, or about eighteen months, the criminal charge against appellant was before this court. Considering the complex legal problems in *Sodergren I,* together with a specially concurring opinion and two dissenting opinions, it is not unreasonable that this case was in the Wyoming Supreme Court for eighteen months.

In the absence of bad faith, neglect, or purposeful delay, an appeal by the state

does not of itself weigh against the state in a speedy trial problem. *United States v. Guerrero*, 756 F.2d 1342 (9th Cir.1984). In this case, rather than a traditional appeal, the delay was occasioned by petitions for a bill of exceptions, and a petition for a writ of certiorari, in effect, an interlocutory appeal. We held in *Grable v. State*, Wyo., 649 P.2d 663 (1982), that the filing of the mandate of reversal in the district court was the date on which appellant's right to a speedy trial commenced. No mandate was issued in *Sodergren I*, but the opinion and journal order were issued on June 26, 1984, and the record returned to the district court July 18, 1984. A period of less than two months transpired between filing the original information and commencement of the appellate process with the filing of a bill of exceptions, that is, October 1, 1982, to November 24, 1982. It is not contended that this delay was unreasonable. This matter was originally before the district court for two months, and before this court eighteen months. While we will not ignore the time the case was originally before the district court and the time before this court on appeal, we will consider principally the time after the record was returned to the district court following the opinion in *Sodergren I* and the date of the actual trial, a period of sixty-eight days.

In determining whether appellant's right to a speedy trial was violated we are guided by a four-part test set forth in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). This test involves, 1) length of the delay; 2) reason for the delay; 3) a defendant's assertion of his right to speedy trial; and 4) whether prejudice resulted to the defendant from the delay.

■ As indicated earlier, the delay of twenty-five months between the criminal complaint and actual trial was beyond the state's control, mainly because of this court's disposition of a complex case and a proliferation of opinions. The state controlled only sixty-eight days of that period of time, having asked for a four-week continuance in order to find all of its witnesses. A reason for delay, such as a missing witness, is a valid reason and will justify a delay. *Barker v. Wingo*, supra.

■ About three weeks before trial, appellant filed a motion to dismiss for lack of speedy trial. This motion was denied. We have held that appellant has an affirmative duty to make certain a speedy trial violation does not occur. *Cook v. State*, Wyo., 631 P.2d 5 (1981). Failure to fulfill that duty within a reasonable time operates as a waiver. In this case appellant's failure to assert his right to a speedy trial until the "eleventh hour" weighs heavily against him.

We cannot see any prejudice to appellant because of the delay in trial. In *Barker v. Wingo*, supra, three possible objectives in obtaining speedy trials were indicated: "(i) [T]o prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. * * *"

The first two concerns have no application here. Appellant was not incarcerated before trial, and there is no indication that his concern and anxiety was more severe than usually experienced by an accused. *Grable v. State*, supra.

As to the third concern, appellant contends that the delay prejudiced his defense because two years after the accident many of the physical marks left at the scene by the collision had disappeared, thus hindering his ability to have an accident reconstruction expert testify on his behalf. The need for a reconstruction expert existed from the beginning, regardless of the charge filed against him. The physical evidence any expert would need to reconstruct the accident would vanish in a matter of days, not months. Any prejudice to appellant resulting from the lack of physical evidence at the scene is due to his failure to preserve this evidence. Prejudice, if any, can be linked directly to factors other than delay by the prosecution. Appellant demonstrates no prejudice in support of his speedy trial claim, nor do we see any.

■ As to the four-part test in Barker, no single factor is determinative. The four

factors must be balanced and a determination made as to whether a speedy trial right has been violated. Here, appellant's argument fails for several reasons. First, he has counted time the case was in this court, which is not chargeable to the state. Second, appellant failed to assert his right to a speedy trial until three weeks before trial. Finally, the alleged prejudice has not been linked to the delay.

In addition to the constitutional right to a speedy trial, appellant claims a statutory right. Rule 45(b), Wyoming Rules of Criminal Procedure, provides:

"By the Court—If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against the defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint."

Rule 204, Uniform Rules for the District Courts of the State of Wyoming, provides in part:

"(a) It is the responsibility of court and counsel to insure to each person charged with crime a speedy trial.

"(b) A criminal charge shall be brought to trial within 120 days following the filing of information or indictment."

█ These rules cited by appellant are applicable only after the record in *Sodergren I* was returned to the district court, and as mentioned before, trial in the district court began sixty-eight days after this time. We indicated in our constitutional discussion of the speedy trial problem that sixty-eight days from the return of the record to trial was not unreasonable, and this period of time did not violate any rule regarding a speedy trial.

## V

Appellant next contends that the district court erred in refusing to give his requested instructions B, E and Q. Appellant says in his brief that "these three instructions pertain to the lesser-included offense of vehicular homicide." Appellant's proposed instruction B, while characterized as a less-er-included offense, is not a lesser-included offense instruction; it sets out the elements of involuntary manslaughter and more.

The court instructed the jury, following Wyoming Pattern Jury Instructions Criminal, § 7.503, p. 125 (1978), thusly:

"Instruction No. 6

"The necessary elements of involuntary manslaughter are:

"1. The crime occurred within the County of Natrona on or about the date of August 23, 1982; and

"2. The Defendant killed a human being; and

"3. The Defendant acted involuntarily; but

"4. With culpable neglect or criminal carelessness.

"If you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the Defendant not guilty.

"If, on the other hand, you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the Defendant guilty."

Appellant's proposed instruction B contained the first four elements that were contained in the court's instruction No. 6; additionally, such proposed instruction added two elements as follows:

"5. That the culpable negligence or criminal carelessness was the proximate cause of the accident; and

"6. The defendant's conduct does not come within the exception provided in W.S. 31–5–1117."

The statute under which appellant was charged, § 6-4-107, W.S.1977 (Cum.Supp. 1982), reads:

"Whoever unlawfully kills any human being without malice, expressed or implied, either voluntarily, upon a sudden heat of passion, or involuntarily, but in the commission of some *unlawful* act, except as provided in W.S. 31–5–1117, or

by any *culpable* neglect or *criminal* carelessness, is guilty of manslaughter * * *." (Emphasis added.)

■ It is obvious from reading the manslaughter statute that proximate cause is not an element of the crime as proposed by appellant in element 5 of his proposed instruction B. In view of our holding in Sodergren I, reference to § 31–5–1117, is improper. The effect of our ruling in that case was the elimination of the § 31–5–1117 exception. Appellant's proposed instruction B was not a lesser-included offense instruction, and was an incorrect involuntary manslaughter instruction.

■ In his proposed instructions E and Q, appellant requested the court to instruct the jury that vehicular homicide is a lesser-included offense in the charge of manslaughter. Offered instruction E makes reference to a vehicular homicide statute, § 31–5–1117(a), (b), W.S.1977 (Cum.Supp. 1979), that was superseded by the statute we considered in *Sodergren I*, § 31–5–1117(a), (b), W.S.1977 (Cum.Supp.1982). We know of no authority for the suggestion that a statute no longer in force can serve as the basis for an instruction. Furthermore, in *Sodergren I* we did not reinstate the 1979 statute (§ 31–5–1117(a), (b), W.S.1977 (Cum.Supp.1979)). In *Sodergren I*, because of the infirmities of the vehicular homicide statute, we determined that statute could not be the basis of a criminal charge. That being the case, appellant could not be convicted of vehicular homicide; therefore, it could not be a lesser-included offense. See generally, *Amin v. State*, Wyo., 694 P.2d 119 (1985).

## VI

Appellant argues that the court's refusal to give his proposed instructions J, K and P was reversible error. They read as follows:

### "Instruction No. J

"YOU ARE INSTRUCTED THAT to make an act *carelessly* performed resulting in death a criminal one, the carelessness must have been gross, implying an indifference to consequences; and the term *culpable* neglect means something more than mere negligence. It means *wantonness* and a disregard of the consequences which may ensue and indifference to the rights of others that is equivalent to a criminal intent.

"And carelessness by reason of driving at a speed that is unreasonable or is such as is likely to endanger life or limb is not necessarily criminal carelessness within the meaning of our statute providing for punishment for manslaughter." (Emphasis added.)

### "Instruction No. K

"YOU ARE INSTRUCTED THAT whether the misconduct of the defendant amounted to 'culpable neglect' or 'criminal carelessness' is to be determined from the nature of the act and not from its consequences.

"Not only must the misconduct be of grave character, but under the statute, it must also be *willful*. By willful misconduct is meant either intentional misconduct—that is, such as is done purposely, with knowledge—or misconduct of such a character as to evince a wantonness and disregard of the consequences which may ensue, and indifference to the rights of others that is equivalent to a criminal intent. (Emphasis added.)

"Ordinary negligence could never be even serious misconduct, much less willful misconduct. No misconduct which is thoughtless, heedless, inadvertent, of the moment, and none which arise from an error of judgment can be willful, culpable, or criminal carelessness.

"Nor will every violation of a statute or a public regulation, or a rule, regulation, order or instruction of an employer, constitute willful conduct or criminal carelessness."

### "Instruction No. P

"You are instructed that the defendant is not charged with the violation of any traffic statute or ordinance, and any violation of a traffic ordinance will not, of

itself, constitute criminal or culpable negligence."

We are not convinced that appellant's objection to the court's refusal to give these proposed instructions was sufficiently specific to comply with Rule 31, W.R. Cr.P. and Rule 51, Wyoming Rules of Civil Procedure. The spirit and policy of these rules is to "apprise and inform the trial court of the purpose of the offered instructions and of objections to proposed instructions so that he may have an opportunity to correct and amplify them before submission to the jury." *Alberts v. State*, Wyo., 642 P.2d 447, 453 (1982). Rather than analyze appellant's objections, however, we will address the issue of the propriety of appellant's proposed instructions.

▮▮ The jury was instructed as to the necessary elements of involuntary manslaughter, and the definitions of "involuntarily," "culpable neglect" and "criminal carelessness." These instructions are found in W.P.J.I.C., §§ 7.503, 7.508, 7.510 (1978), and were based on the cases cited therein. Having instructed the jury on the general principles of law applicable in this case, the trial court discharged its duty. *Benson v. State*, Wyo., 571 P.2d 595 (1977). An instruction does not have to be worded exactly as requested by a party as long as the correct statement of law was given to the jury. *Alberts v. State*, supra; and *Scheikofksy v. State*, Wyo., 636 P.2d 1107 (1981).

▮▮ A trial court properly refuses instructions which unduly emphasize one aspect of the evidence. *Ellifritz v. State*, Wyo., 704 P.2d 1300 (1985); and *Evans v. State*, Wyo., 655 P.2d 1214 (1982). "The weight to be given any particular portion of evidence is a matter for counsel to argue and for the jury to decide." *State v. Humbolt*, 1 Kan.App.2d 137, 562 P.2d 123, 127 (1977). An instruction should not tell the jury how to weigh a particular piece of evidence, *State v. Lee*, 221 Kan. 109, 558 P.2d 1096 (1976), nor how to decide an ultimate factual issue in a case. *Britton v. State*, Wyo., 643 P.2d 935 (1982). Appellant's proposed instructions, in essence,

told the jury how to view the evidence indicating appellant had been speeding and that he had run the stop sign. These proposed instructions unduly emphasized one aspect of the evidence and were otherwise improper. The cases cited by appellant only minimally support his position, and therefore will not be considered.

▮▮ The court properly refused to give appellant's proposed instructions J, K and P. The portions of these instructions, which were correct statements of the law, were embodied in other instructions given by the court.

## VII

▮▮ In appellant's final assignment of error he contends that he should have been sentenced under "§ 31–5–1117, W.S.1979 or § 6–2–106, W.S.1983." Section 31–5–1117 was the vehicular homicide statute in effect when appellant was first charged in 1982. Section 6–2–106 was the statute in effect at the time appellant was sentenced, February 15, 1985. Appellant has contended throughout his trial and appeal that he should have been charged with vehicular homicide. Before we could logically rule that appellant should have been sentenced under § 31–5–1117, *Sodergren I* should be overruled. We again say no compelling reason has been shown why we should do this.

Appellant's argument that he should have been sentenced under § 6–2–106 is based on § 6–1–101(c), W.S.1977 (June 1983 Replacement), which provides:

"In a case pending on or after the effective date, involving a crime committed prior to the effective date, if the penalty under this act for the crime is different from the penalty under prior law, the court shall impose the lesser sentence."

In *Attletweedt v. State*, Wyo., 684 P.2d 812, 815 (1984), this court said:

" * * * We conclude that the legislative intent is to have the law in effect prior to July 1, 1983 control all aspects of the prosecution for a crime in which any of its elements occurred prior to that date,

with a single exception—any *original* sentence imposed after July 1, 1983 must be the lesser of that provided for the crime where the new code and the old code diverge."

Section 6–1–101(c) does not apply in this case. Appellant was charged with, and convicted of, involuntary manslaughter. Both the previous and the current statutes proscribing manslaughter provide for a sentence of up to twenty years in the state penitentiary. Section 6–4–107, W.S.1977 (Cum.Supp.1979) and § 6–2–105(b), W.S. 1977 (June 1983 Replacement). Thus, the new code and the old code do not diverge, making § 6–1–101(c) entirely inapplicable. Appellant's interpretation and application of § 6–1–101(c) is inappropriate; he was never charged with or convicted of vehicular homicide. Appellant was properly sentenced under the manslaughter statute.

Appellant has presented seven ingenious, well-reasoned arguments, none of which are irrational. The principal thrust of the arguments in issues I, II, III, V and VII is that we should overrule *Sodergren I.* We are not persuaded that we should.

We have carefully examined appellant's seven issues raised on appeal, and find no reversible error.

Affirmed.

THOMAS, C.J., files a specially concurring opinion.

GUTHRIE, J. (Retired), files a specially concurring opinion.

CARDINE, J., dissents.

THOMAS, Chief Justice, specially concurring.

I concur in the result in this case. Because of the position that I articulated in my separate opinion in *State v. Sodergren,* Wyo., 686 P.2d 521 (1984), I believe that it would have been appropriate to give the requested instructions on the lesser included offense of vehicular homicide. I have not receded from that position.

I am satisfied, however, that the evidence is sufficient to sustain the jury's finding of guilt with respect to the charge of manslaughter, and under those circumstances I do not discern prejudicial error in the failure to give these instructions in light of the prior decision of the court in *State v. Sodergren,* supra.

CARDINE, Justice, dissenting.

I dissent for the reasons stated in my dissenting opinion found in *State v. Sodergren,* Wyo., 686 P.2d 521 at 539 (1984).

GUTHRIE, Justice (Retired), specially concurring.

I reluctantly concur.

I have a strong disagreement with the opinion and disposal of the preceding case of *State v. Sodergren,* Wyo., 686 P.2d 521 (1984), and had I been a participant in its disposal, would have joined the dissents of Justices Rose and Cardine. It is my view that I must accept that disposition as the law insofar as it is applicable to this case.

I do this because a fair and proper judicial system must recognize the force and application of the doctrine of stare decisis. Thus it would be improper to indulge myself in an explanation of my personal views as contrasted to that case.